No. 02-092

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 304

JEFFERSON COUNTY,

        Plaintiff and Respondent,

    v.

MONTANA STANDARD,

        Defendant and Respondent,

    and

DONNA SEVALSTAD,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fifth Judicial District,
In and for the County of Jefferson, Cause No. DV-01-9847,
The Honorable Loren Tucker, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Robert T. Cumins, Attorney at Law, Helena, Montana

    For Respondent Montana Standard:

        Ronald F. Waterman, Laura D. Vachowski, Gough, Shanahan, Johnson &
Waterman, Helena, Montana

    For Respondent Jefferson County:

        Matthew Johnson, Jefferson County Attorney, Boulder, Montana

        Submitted on Briefs:  June 13, 2002

        Decided:  November 6, 2003

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1     Appellant Donna Sevalstad pled guilty to driving under the influence of alcohol and driving with an expired license in the Fifth Judicial District Court, Jefferson County.  At the time Sevalstad was arrested for the above charges, she was a County Commissioner in Beaverhead County.  Respondent Montana Standard is a newspaper with its principal office in Butte, Montana.  As a result of Sevalstad's status as a public official, Montana Standard requested that Respondent Jefferson County release information regarding Sevalstad's arrest.  The District Court ordered that the requested information be released to Montana Standard, and Sevalstad appeals.  We affirm the judgment of the District Court.

¶2     We restate the sole issue on appeal as follows:

¶3     Did the District Court err when it ordered that information regarding Sevalstad's arrest be released to Montana Standard?

## BACKGROUND

¶4     On February 26, 2001, Donna Sevalstad was arrested in Jefferson County for driving under the influence of alcohol, in violation of § 61-8-401, MCA (1999), and driving with an expired license, in violation of § 61-5-102, MCA (1999).  At the time of her arrest, Sevalstad was a County Commissioner in Beaverhead County.  Sevalstad pled guilty to the charges on April 3, 2001.

¶5     Montana Standard is a newspaper with its principal office in Butte, Montana.  On April 5, 2001, Montana Standard requested that Jefferson County provide it with information regarding Sevalstad's arrest. Specifically, Montana Standard requested that Jefferson County provide: (1) the initial investigation report; and (2) any video tapes taken at the time of

2

Sevalstad's arrest. Jefferson County responded on April 9, 2001, by providing Montana Standard with the initial investigation report. Jefferson County then declined to provide further information without a court order.

¶6    On April 11, 2001, Montana Standard asked Jefferson County to petition the District Court for an order to release the additional information pertaining to Sevalstad's arrest. Jefferson County filed a complaint for declaratory judgment on April 16, 2001, joining Montana Standard as a party, and requesting that the District Court adjudicate the rights and duties of the parties with regard to Sevalstad's arrest information. On July 9, 2001, Montana Standard filed a motion for summary judgment, in which it asserted that it was entitled to the information relating to Sevalstad's arrest. The District Court conducted a hearing on Montana Standard's motion on November 7, 2001. On November 28, 2001, the District Court issued an order, instructing Jefferson County to submit Sevalstad's arrest information to the District Court for an *in camera* inspection.

¶7    The information submitted to the District Court consisted of a police officer's report and two video tapes. Following an *in camera* inspection, the District Court issued an order on January 10, 2002, requiring Jefferson County to release the arrest information, including the video tapes, to Montana Standard. However, the order stated that while Montana Standard could report on the contents of the information, it could not copy or publish the video tapes.

¶8    Subsequent to the District Court's January 10, 2002, order, Jefferson County provided the District Court with additional written documents regarding Sevalstad's arrest. The District Court examined the documents and issued a supplemental order on January 25, 2002.

The supplemental order stated that while the additional documents would be released to Montana Standard, it was prohibited from copying or publishing the documents. The supplemental order further stated that Sevalstad's social security number and driver's license number would be removed from the documents before they were released to Montana Standard. Sevalstad appealed the District Court's January 10, 2002, order, as well as its January 25, 2002, order, on February 8, 2002. The District Court stayed its orders pending appeal.

## STANDARD OF REVIEW

¶9 We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *Brumit v. Lewis*, 2002 MT 346, ¶ 12, 313 Mont. 332, ¶ 12, 61 P.3d 138, ¶ 12.

## DISCUSSION

¶10 Did the District Court err when it ordered that information regarding Sevalstad's arrest be released to Montana Standard?

¶11 On appeal, Sevalstad maintains that the District Court violated her constitutional right to privacy when it ordered Jefferson County to release information regarding her arrest to Montana Standard. Montana Standard counters that because Sevalstad is a public official, the District Court properly ordered that the information be released.

¶12 The Montana Criminal Justice Information Act divides criminal justice information into two categories: public and confidential. Section 44-5-103, MCA (1999). Information pertaining to a criminal investigation, as was sought by Montana Standard in this case, is confidential criminal justice information. Section 44-5-103(3)(a), MCA (1999). Pursuant

4

to § 44-5-303(1), MCA (1999), dissemination of confidential criminal justice information is restricted to:

> criminal justice agencies, to those authorized by law to receive it, and to those authorized to receive it by a district court upon a written finding that the demands of individual privacy do not clearly exceed the merits of public disclosure.

Montana Standard is not a criminal justice agency. Thus, Montana Standard may only obtain Sevalstad's arrest information if: (1) it is authorized by law to receive such information; or (2) a district court makes a written finding that it may receive such information. Section 44-5-303(1), MCA (1999).

¶13     This Court has previously concluded that under the "Right to Know" provision of the Montana Constitution, any person is authorized by law to receive confidential criminal justice information. *Bozeman Daily Chronicle v. Police Dept.* (1993), 260 Mont. 218, 223, 859 P.2d 435, 438. We have further concluded that the rights afforded by the "Right to Know" provision apply not only to individual persons, but also to media entities. *State v. Mont. Judicial Dist. Court* (1997), 281 Mont. 285, 294, 933 P.2d 829, 835. Montana's "Right to Know" provision provides that:

> No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

Art. II, Sec. 9, Mont. Const. However, the rights granted under the "Right to Know" provision are not absolute. That is, the right to receive confidential criminal justice information under the "Right to Know" provision is limited by the "Right to Privacy" provision of the Montana Constitution. *Bozeman Daily Chronicle*, 260 Mont. at 224, 859

5

P.2d at 439; *In re Lacy* (1989), 239 Mont. 321, 325, 780 P.2d 186, 188.  Montana's "Right

to Privacy" provision provides that:

> The right of individual privacy is essential to the well-being of a free society
> and shall not be infringed without the showing of a compelling state interest.

Art. II, Sec. 10, Mont. Const.  Therefore, while Montana Standard is authorized by law to

receive Sevalstad's arrest information, Montana Standard's constitutional right to know must

be balanced against Sevalstad's constitutional right to privacy.

¶14     That said, we note that in cases involving confidential criminal justice information,

an inevitable conflict exists between the public's right to know and an individual's right to

privacy.  We have dealt with this conflict by requiring the party requesting the information

to make a showing that it is entitled to receive such information.  *Bozeman Daily Chronicle*,

260 Mont. at 224, 859 P.2d at 439.  In this case, Montana Standard asserts that it is entitled

to receive the requested information because Sevalstad's arrest directly relates to her ability

to carry out her duties as a County Commissioner.  Specifically, Montana Standard alleges

that Sevalstad's behavior violated the public trust, and that such violation diminishes her

ability to supervise employees and to work effectively with her peers.  Montana Standard

further alleges that Sevalstad's decision to drive: (1) while under the influence of alcohol;

and (2) with an expired license, questions her ability to exercise proper judgment.

¶15     Once the party requesting the information makes a showing of entitlement, as

Montana Standard did in this case, the request must be balanced against the privacy interest

of the individual in question.  In order to determine if the individual has a protected privacy

interest under Article II, Section 10, of the Montana Constitution, it is appropriate to apply

a two-part test.  *Bozeman Daily Chronicle*, 260 Mont. at 225, 859 P.2d at 439.  First, one

6

considers whether the individual has a subjective or actual expectation of privacy. Secondly, one determines whether society is willing to recognize that expectation as reasonable. *Bozeman Daily Chronicle*, 260 Mont. at 225, 859 P.2d at 439; *Lincoln County Com'n v. Nixon*, 1998 MT 298, ¶ 16, 292 Mont. 43, ¶ 16, 968 P.2d 1141, ¶ 16.

¶16 Sevalstad concedes that she was a public official at the time of her arrest. We have previously held that: "When a person is elected to public office, the general public has that responsibility, and it is then their right to be informed of the actions and conduct of their elected officials." *Citizens to Recall Mayor v. Whitlock* (1992), 255 Mont. 517, 522, 844 P.2d 74, 77. We have further held that information relating to an official's ability to perform public duties should not be withheld from public scrutiny. *Citizens*, 255 Mont. at 522, 844 P.2d at 78; *Bozeman Daily Chronicle*, 260 Mont. at 227, 859 P.2d at 440.

¶17 In the instant case, Sevalstad pled guilty to driving under the influence of alcohol and driving with an expired license. While Sevelstad's driving habits may not pertain to her position as a County Commissioner, her decision to violate the law directly relates to her ability to effectively perform her job duties. That is, Sevalstad's decision to violate the law questions her judgment. Her violation of the law may also have an effect on her ability to work effectively with her peers and to properly supervise other employees. Society will not permit complete privacy and unaccountability when an elected official is accused of misconduct which is related to the performance of his or her public duties. *Citizens*, 255 Mont. at 523, 844 P.2d at 78. Therefore, we conclude that because the information sought by Montana Standard relates to Sevalstad's ability to perform her duties as a County Commissioner, any expectation of privacy she has regarding such information is

7

unreasonable.

¶18 Once it is determined that a constitutionally protected privacy interest is at stake, it is appropriate to consider whether the demands of individual privacy clearly exceed the merits of public disclosure. *Citizens*, 255 Mont. at 523, 844 P.2d at 78; *Bozeman Daily Chronicle*, 260 Mont. at 227, 859 P.2d at 441. However, because we have determined that Sevalstad's privacy expectation was unreasonable under these circumstances, her individual privacy rights clearly do not exceed the merits of public disclosure in the instant case.

¶19 As a final matter, we note that although Sevalstad did not have a constitutionally protected privacy interest in her arrest information, the District Court took steps to protect her privacy, as well as the privacy interests of other unidentified individuals, when it conducted an *in camera* inspection of the information. In prior cases, we have concluded that it is proper for a district court to conduct such an *in camera* inspection in order to balance the privacy rights of all of the individuals involved in the case against the public's right to know. *Bozeman Daily Chronicle*, 260 Mont. at 229, 859 P.2d at 442; *Lacy*, 239 Mont. at 326, 780 P.2d at 189; *Lincoln County Com'n*, ¶¶ 27-28. Here, the *in camera* inspection revealed that no third party privacy considerations existed, as the only individuals involved in Sevalstad's arrest were officers acting within the course and scope of their employment. Accordingly, we need not contemplate any third party privacy interests on appeal.

¶20 Subsequent to its *in camera* inspection, the District Court ordered that Sevalstad's arrest information be released to Montana Standard under the following conditions: (1) Montana Standard was prohibited from copying or publishing the information; and (2)

Sevalstad's social security number and driver's license number would be removed from the information before it was released. While we have concluded that Sevalstad does not have a protected privacy interest in her arrest information, we also conclude that Sevalstad does retain a privacy interest in other types of personal information not relevant to her status as a public official, such as her social security number and driver's license number. Thus, it was proper for the District Court to shield information that was not relevant to Sevalstad's status as a public official from public scrutiny.

¶21 As we noted above, Sevalstad's individual privacy rights in her arrest information do not exceed the merits of public disclosure of such information. Therefore, the District Court did not violate Sevalstad's constitutional right to privacy when it ordered that information regarding her arrest be released to Montana Standard.

¶22 For the foregoing reasons, the judgment of the District Court is affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE