No. 05-406

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 329

_____

IN RE THE PETITION OF BILLINGS HIGH SCHOOL
DISTRICT NO. 2, YELLOWSTONE COUNTY,

　　　　　Petitioner and Respondent,

　　v.

THE BILLINGS GAZETTE,

　　　　　Respondent and Cross-Appellant,

　　and

BILLINGS EDUCATION ASSOCIATION, D.M. and P.G.,

　　　　　Respondents and Appellants.

_____

APPEAL FROM:　　District Court of the Thirteenth Judicial District,
　　　　　　　　In and for the County of Yellowstone, Cause No. DV-04-1030,
　　　　　　　　The Honorable Susan P. Watters, Presiding Judge.

COUNSEL OF RECORD:

　　　　　For Appellants:

　　　　　Richard A. Larson, Harlen, Chronister, Parish & Larson, P.C., Helena,
　　　　　Montana

　　　　　For Cross-Appellant The Billings Gazette:

　　　　　Martha Sheehy, Sheehy Law Firm, Billings, Montana

For Respondent Billings High School District No. 2:

Laurence R. Martin and Mary E. Duncan, Felt, Martin, Frazier, Jacobs & Rapkoch, P.C., Billings, Montana

_____

Submitted on Briefs:  March 22, 2006

Decided:  December 12, 2006

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1    The Thirteenth Judicial District Court, Yellowstone County, directed Billings High School District No. 2 (School District) to release certain documents related to teachers D.M. and P.G. to the Billings Gazette (Gazette) pursuant to Montana's statutory and constitutional "right to know" provisions. The District Court also denied the Gazette's request for attorney fees.

¶2    The Billings Education Association (BEA), D.M. and P.G. appeal from the District Court's underlying determinations that D.M. and P.G. have no reasonable expectation of privacy in their conduct as public employees and, even if they did have a reasonable expectation of privacy, that privacy expectation did not clearly exceed the merits of public disclosure. They also appeal from the District Court's ultimate order requiring the School District to release the documents to the Gazette. We affirm.

¶3    The Gazette cross-appeals the issue of whether the District Court abused its discretion in denying its request for attorney fees. We affirm.

## BACKGROUND

¶4    On September 22, 2004, the Gazette sent the School District a written request for copies of the employment records of two Billings high school teachers, D.M. and P.G., including records of any investigation and disciplinary action taken with regard to an incident which had occurred involving the two teachers. The Gazette relied on Article II, Section 9 of the Montana Constitution, which states that "[n]o person shall be deprived of the right to examine documents . . . except in cases in which the demand of individual

3

privacy clearly exceeds the merits of public disclosure."

¶5 The School District notified D.M., P.G., and the BEA of the Gazette's request. The BEA, on behalf of D.M. and P.G., responded by letter dated September 23, 2004, that the teachers asserted privacy interests in the requested documents. It further stated the teachers did not waive their privacy interests in—or otherwise authorize the release of—the documents except as to information about their dates of hire, salary history, and teaching and coaching assignments.

¶6 On October 1, 2004, the School District filed a declaratory action requesting the District Court to review the relevant documents *in camera* and declare the parties' rights by determining which documents, if any, should be released to the Gazette pursuant to the Montana Constitution and law. The petition named the Gazette, the BEA, D.M. and P.G. as respondents. On October 12, 2004, the School District released documents to the Gazette relating to the teachers' hire dates, salary history, teaching and coaching assignments, and other documents not subject to the asserted privacy claims. On November 16, 2004, the School District delivered to the District Court for *in camera* inspection both the documents which had been released to the Gazette and those which had been withheld from the Gazette because of privacy concerns.

¶7 After full briefing and oral argument by the parties, the District Court determined that, as public school teachers, D.M. and P.G. occupy positions of public trust and their conduct during the incident underlying the investigative and disciplinary information at issue reflected directly upon their ability to perform their duties. Consequently, the

District Court concluded that D.M. and P.G. did not have a reasonable expectation of privacy in the investigation of their conduct as public employees. The court further concluded that, even if the teachers had a reasonable expectation of privacy in the information, that expectation was outweighed by the merits of public disclosure. On that basis, the District Court ordered the School District to release twelve entire documents and one document with a specified redaction to the Gazette. Observing that the School District had not yet provided additional documents for its *in camera* review, the court declined to rule with regard to those documents and reserved ruling on the Gazette's request for costs and attorney fees.

¶8 The BEA, D.M and P.G. appealed the District Court's order and moved for a stay of proceedings pending the appeal. The District Court granted the stay. Following filing of the notice of appeal, the School District located additional documents relevant to the Gazette's original request and delivered those documents to the District Court for *in camera* review as they became available. On February 9, 2005, we dismissed the original appeal as interlocutory and premature.

¶9 On March 15, 2005, the District Court entered an order dissolving the stay of proceedings, amending its prior order regarding the disclosure of documents, ordering the School District to release all designated documents to the Gazette by the following day, and setting a briefing schedule on the attorney fees issue. The School District delivered the documents as ordered and the District Court subsequently denied the Gazette's request for attorney fees. As set forth above, the BEA, D.M. and P.G. (collectively, the

Teachers) appeal and the Gazette cross-appeals.

## DISCUSSION

**¶10** ***Did the District Court err in determining that D.M. and P.G. have no reasonable expectation of privacy in their conduct as public employees and in ordering the School District to release documents to the Gazette?***

**¶11** The Teachers contend the District Court erred in concluding they have no reasonable expectation of privacy in the documents at issue and, as a result, also erred in ordering the School District to release the documents to the Gazette. They request reversal of the order requiring release. The Gazette contends, as a threshold matter, that the release of the disputed documents to—and dissemination of the information to the public by—the Gazette renders this issue moot.

**¶12** Mootness is a threshold issue which must be addressed prior to resolving an underlying dispute. *Shamrock Motors, Inc. v. Ford Motor Co.*, 1999 MT 21, ¶ 17, 293 Mont. 188, ¶ 17, 974 P.2d 1150, ¶ 17. An issue "is moot when, due to an event or happening, the issue has ceased to exist and no longer presents an actual controversy." *Shamrock Motors*, ¶ 19. Stated differently, an issue is moot when a court cannot grant effective relief or restore the parties to their original position. *Shamrock Motors*, ¶ 19.

**¶13** Here, the underlying dispute in the District Court was whether the School District should release various documents to the Gazette under Article II, Section 9 of the Montana Constitution, commonly referred to as the "right to know" provision. The School District released these documents to the Gazette pursuant to the District Court's order. We could reverse the District Court's legal conclusions regarding the Teachers'

6

reasonable expectation of privacy and the "right to know" determination if we were to hold the court had erred, and we could require the return or destruction of the copies of the documents released to the Gazette. We could not, however, negate the Gazette's knowledge of the contents or retrieve any public dissemination made of the information in the documents. Consequently, we cannot restore the parties to their original positions. As the District Court aptly stated in its order granting a stay of proceedings pending the first appeal in this matter, "[o]nce the bell is rung, it cannot be un-rung." A decision by this Court in the Teachers' favor would not—indeed, could not—grant them effective relief.

¶14    Implicitly conceding that the issue is moot, the Teachers rely on *Common Cause v. Statutory Committee*, 263 Mont. 324, 868 P.2d 604 (1994), in arguing that we should address the merits of this issue under the exception to the mootness doctrine for constitutional questions which are capable of recurring but which could evade effective review.

> This exception recognizes that the amount of time inherent in the litigation process renders it nearly impossible in some cases for a final judicial decision to be reached before the case is rendered moot. In such circumstances, because application of the mootness doctrine would effectively deny the remedy of appeal, a court will agree to issue a decision even after the actual controversy has been resolved.

*Grabow v. Montana High School Ass'n*, 2000 MT 159, ¶ 15, 300 Mont. 227, ¶ 15, 3 P.3d 650, ¶ 15 (citing *Common Cause*, 263 Mont. at 328, 868 P.2d at 606-07). A party seeking to invoke the "capable of repetition, yet evading review" exception to the mootness doctrine bears the burden of establishing both that the challenged action is too

7

short in duration to be litigated fully before its cessation and that there is a reasonable expectation that the same complaining party would be subject to the same action again. *Skinner v. Lewis and Clark*, 1999 MT 106, ¶ 18, 294 Mont. 310, ¶ 18, 980 P.2d 1049, ¶ 18.

¶15   We recently discussed and clarified application of the "capable of repetition, yet evading review" exception to the mootness doctrine in *Havre Daily News v. City of Havre*, 2006 MT 215, 333 Mont. 331, 142 P.3d 864.  We adopted this exception from federal jurisprudence, which has established that the exception "is properly confined to situations where the challenged conduct *invariably* ceases before courts can fully adjudicate the matter." *Havre Daily News*, ¶ 33 (citations omitted).  In this regard, the Teachers assert that, although the proceedings in this case were not particularly short in duration, it is likely that future cases involving disclosure of documents relating to teacher disciplinary actions will be short in light of the District Court's determination that D.M. and P.G. have no reasonable expectation of privacy in their conduct as public employees.  This assertion is speculative and fails to establish that proceedings involving the release of documents relating to teacher disciplinary actions are inherently of limited duration.

¶16   The second prong of the "capable of repetition, yet evading review" exception requires the party asserting the exception to establish that there is a reasonable expectation that the same complaining party would be subject to the same action again. The Teachers contend that "[t]here is a reasonable expectation that [the School District]

8

(and others throughout the state), the BEA (and other labor organizations throughout the state), and a host of individual teachers are subject to being drawn into actions concerning fundamental privacy rights." Given the inherent tension between Montana's constitutional right to know and right of individual privacy, this contention can hardly be disputed. However, the Teachers' mere assertion that other school districts, other labor organizations and other individual teachers may become involved in "right to know" litigation over access to documents does not establish that "the same complaining party"—namely, these Teachers—can reasonably expect to be subject to a similar action in the future.

¶17    More importantly, the determination of whether the public has the right to examine particular documents in the face of asserted individual privacy rights entails a fact-specific inquiry to ascertain whether the individual involved has a subjective or actual expectation of privacy which society is willing to recognize as reasonable and, if so, whether that expectation of privacy clearly exceeds the merits of public disclosure of the documents under the circumstances. *See Havre Daily News*, ¶ 38; *Jefferson County v. Montana Standard*, 2003 MT 304, ¶¶ 14-18, 318 Mont. 173, ¶¶ 14-18, 79 P.3d 805, ¶¶ 14-18. Because this inquiry must be undertaken within the context of the facts of each case, it cannot be said that there is a reasonable expectation that the same action—comprising the same factual scenario—will arise again.

¶18    Finally, we have stated that "[a] party may not claim an exception to the mootness doctrine where the case has become moot through that party's own failure to seek a stay

of the judgment." *Turner v. Mountain Engineering and Const., Inc.*, 276 Mont. 55, 60, 915 P.2d 799, 803 (1996). We adopted this principle from *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1993), wherein the Ninth Circuit Court of Appeals reaffirmed its prior cases holding that

> a party may not profit from the "capable of repetition yet evading review" exception to mootness, where through his own failure to seek and obtain a stay he has prevented an appellate court from reviewing the trial court's decision. The exception was designed to apply to situations where the type of injury involved inherently precludes judicial review, not to situations where the failure of parties to take actions has precluded review as a practical matter.

*Gates*, 987 F.2d at 1408-09 (citation omitted). Thus, where a party has failed to obtain— or at least attempt to obtain—a stay of proceedings pending appellate review, that party may not take advantage of the "capable of repetition, yet evading review" exception to the mootness doctrine. *Gates*, 987 F.2d at 1409.

¶19 Upon remand from our dismissal of the first appeal in this matter, the Gazette moved to dissolve the District Court's earlier stay of proceedings pending appeal on the basis there no longer was an appeal pending. At a hearing on the motion, counsel for the Teachers conceded there was no legal basis for continuing the stay pending appeal. Counsel for the Teachers further observed that, if the District Court ordered the School District to release the documents the following day, the Teachers still would not be able to request a stay because the order would not be a final order with the attorney fees issue still outstanding. This observation, while not technically incorrect, also was not entirely accurate.

10

¶20 Pursuant to M. R. Civ. P. 54(b), the Appellants could have requested—under such a circumstance—that the District Court designate its order for release of the documents as a final order for purposes of appeal, notwithstanding the unresolved attorney fees issue. If successful, the Teachers then could have requested a stay of that judgment until all claims in the case were finally determined. *See* M. R. Civ. P. 62(h). Alternatively, having obtained a final judgment as to that claim, they could have appealed the District Court's order to this Court and requested the District Court to grant a stay pursuant to M. R. App. P. 7. The Teachers made no attempt to preserve the *status quo* pending appellate review of the issues they raise in this appeal.

¶21 We conclude that, because the Teachers failed to utilize procedures to preserve their ability to appeal 1) the District Court's determinations that D.M. and P.G. have no reasonable expectation of privacy in their conduct as public employees and—even if they did have a reasonable expectation of privacy—the privacy expectation did not clearly exceed the merits of public disclosure, and 2) the court's ultimate order regarding release of the documents, they cannot avail themselves of the "capable of repetition, yet evading review" exception to the mootness doctrine. Therefore, because these issues have been rendered moot by the School District's release of the documents, we decline to address the merits of the issues.

¶22 *Did the District Court abuse its discretion in denying the Gazette's request for attorney fees?*

¶23 The determination of whether to award a party attorney fees is a discretionary function of a district court and will not be overturned absent an abuse of that discretion.

11

*Pengra v. State*, 2000 MT 291, ¶¶ 24 and 27, 302 Mont. 276, ¶¶ 24 and 27, 14 P.3d 499, ¶¶ 24 and 27. An abuse of discretion occurs when the trial court acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reasoning resulting in substantial injustice. *Gaustad v. City of Columbus*, 272 Mont. 486, 488, 901 P.2d 565, 567 (1995). Furthermore, we will not substitute our judgment for that of the district court unless the court clearly abused its discretion. *Gaustad*, 272 Mont. at 488, 901 P.2d at 567.

¶24 The Gazette requested the District Court to award it attorney fees as the prevailing party in the School District's declaratory judgment action. The Gazette contended it was entitled to attorney fees under §§ 2-3-221 and 27-8-313, MCA. Section 2-3-221, MCA, provides that "[a] plaintiff who prevails in an action brought in district court to enforce his rights under Article II, section 9, of the Montana constitution may be awarded his costs and reasonable attorneys' fees." Under § 27-8-313, MCA, supplemental relief for a party in a declaratory judgment action "may be granted whenever necessary or proper." We have held that this statute provides discretionary authority for a district court to award attorney fees in a declaratory judgment action. *Trustees of Indiana University v. Buxbaum*, 2003 MT 97, ¶ 46, 315 Mont. 210, ¶ 46, 69 P.3d 663, ¶ 46. After reviewing the parties' briefs, the District Court denied the Gazette's request for attorney fees. The Gazette contends that the court abused its discretion in doing so.

¶25 The Gazette asserts that an award of attorney fees under the above-referenced statutes is appropriate because it clearly is the prevailing party in this matter and has

12

performed a service to Montana citizens by enforcing the public's constitutional right to know. In that regard, it relies on *Associated Press, Inc. v. Department of Revenue*, 2000 MT 160, ¶ 43, 300 Mont. 233, ¶ 43, 4 P.3d 5, ¶ 43, for the proposition that, where an entity performs a public service by enforcing a portion of the Montana Constitution which otherwise would be violated, the cost of the litigation should be spread among the beneficiaries.

¶26 The Gazette also asserts that an award of attorney fees is appropriate because the School District needlessly delayed resolution of the action by failing to timely disclose relevant documents to the District Court for its *in camera* inspection. Finally, the Gazette asserts the School District provided the disputed documents to a third party who subsequently revealed the contents of the documents to the public at a school board meeting while this proceeding was still pending in the District Court. The Gazette contends that the School District's disclosure of the documents to a third party of its choice for disclosure to the public, while forcing the Gazette to undergo litigation to obtain those same documents, cannot be justified.

¶27 In response, the School District argues that *Associated Press, Inc.* is distinguishable from the present case and, therefore, does not support an award of attorney fees to the Gazette. We agree. In that case, several media entities brought an action for a declaratory judgment and writ of mandate, requesting the district court to determine that a Department of Revenue (Department) regulation was unconstitutional because it violated the Article II, Section 9 "right to know" provision and to order the

13

Department to release certain documents. *Associated Press, Inc.*, ¶ 10. The district court determined the regulation was constitutional and ruled in favor of the Department. The media entities appealed. *Associated Press, Inc.*, ¶ 19. On appeal, we reversed the district court and held that the Department regulation was facially unconstitutional. *Associated Press, Inc.*, ¶ 28. We further determined that the media entities were entitled to attorney fees pursuant to § 2-3-221, MCA, because they "performed a service for the citizens of the State by enforcing a portion of our Constitution that would otherwise be violated. Due to the public benefits gained by Appellants' efforts, the cost of the litigation should be spread among its beneficiaries." *Associated Press, Inc.*, ¶ 43.

¶28    In *Associated Press, Inc.*, the media entities initiated the court action to enforce the constitutional right to know guaranteed to all Montanans. In contrast, the present case was initiated by the School District in an effort to have the District Court balance the competing rights of the Gazette and the Teachers. In doing so, the School District recognized its obligations pursuant to the constitutional right to know as well as its employees' asserted individual privacy rights, and took a reasonable approach in presenting the matter to a court to resolve. Thus, *Associated Press, Inc.* is distinguishable from the situation here and the Gazette's reliance on that case is misplaced.

¶29    The School District also argues that § 2-3-221, MCA, does not authorize an attorney fees award in this case because the Gazette is not a prevailing "plaintiff" in an action to enforce its rights under Montana's constitutional "right to know" provision. Again, we agree. Section 2-3-221, MCA, provides that a district court may award

14

attorney fees to a "plaintiff who prevails" in an action to enforce rights under Article II, Section 9 of the Montana Constitution. Here, the Gazette was not a plaintiff attempting to enforce rights under the "right to know" provision. Rather, it was the School District which petitioned the District Court to balance the competing constitutional rights asserted by the Gazette and the Teachers. In interpreting statutes, we must simply ascertain and declare the terms of the statute, without inserting language which has been omitted or omitting language which has been inserted. Section 1-2-101, MCA. By its plain language, § 2-3-221, MCA, authorizes an award of attorney fees only to a "plaintiff who prevails" in an action under Article II, Section 9. The Gazette is not such a plaintiff and, as a result, cannot be awarded attorney fees pursuant to § 2-3-221, MCA.

¶30    Finally, the School District argues that the District Court did not abuse its discretion in denying the Gazette attorney fees pursuant to § 27-8-313, MCA, because the School District was justified in bringing its declaratory judgment action and should not be penalized for its efforts to balance the competing interests of the parties involved by being forced to pay attorney fees. As stated above, we have held that a district court "may" award attorney fees pursuant to § 27-8-313, MCA. Thus, the statute is permissive and does not require the District Court to award attorney fees. In other words, the issue remains a discretionary determination by the trial court. We observe that, while a district court's denial of a motion for attorney fees without a statement of its rationale for doing so is itself an abuse of discretion (*see Yellowstone County v. Billings Gazette*, 2006 MT 218, ¶ 30, 333 Mont. 390, ¶ 30, 143 P.3d 135, ¶ 30), here the District Court's order

15

discusses the parties' respective positions and sets forth the court's reasoning for denying the Gazette's motion.

¶31 As stated above, the Gazette contends the District Court abused its discretion in denying the Gazette's motion for attorney fees. As part of its argument, the Gazette observes that the attorney fees statutes on which it relies do not provide criteria for a district court to apply in determining whether to award attorney fees to a party. The Gazette sets forth seven factors which it urges this Court to adopt as standards which district courts must address in determining whether to award attorney fees in constitutional right to know cases in order to "avoid arbitrary decisions, to lend consistency and fairness to awards, and to accomplish the purpose of the statute."

¶32 We decline to adopt the Gazette's proffered guidelines as mandatory factors which district courts must consider in cases of this type. As we stated at the outset of this issue, an abuse of discretion occurs when the trial court acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reasoning resulting in substantial injustice. *Gaustad*, 272 Mont. at 488, 901 P.2d at 567. In exercising discretion, district courts may consider any factor which the parties offer or the court deems appropriate to consider—including those suggested by the Gazette—in determining whether to award attorney fees in cases such as these under §§ 2-3-221 and 27-8-313, MCA. Indeed, the Gazette's arguments to the District Court in support of its attorney fees motion included most, if not all, of the factors it urges us to adopt and the court presumably considered those arguments in its order denying the motion. It is not this Court's place to substitute

16

our judgment for that of the district court in exercising its discretion. *Gaustad*, 272 Mont. at 488, 901 P.2d at 567. For this Court to mandate factors trial courts must consider in exercising their discretion would be a serious intrusion into the province of those courts.

¶33 The Gazette offers no case law in support of its argument that the District Court's denial of attorney fees was an abuse of discretion. The School District, however, relies on *Pengra* for its argument that it should not be penalized for its efforts to have a court balance the competing constitutional interests of the Gazette and the Teachers by being forced to pay attorney fees. We agree that the facts in *Pengra* are substantially similar to the present case and the case supports the District Court's denial of the Gazette's motion for attorney fees.

¶34 The plaintiff in *Pengra* brought a negligence action against the State of Montana (State). The parties settled the case prior to trial and the plaintiff requested that the district court seal the settlement agreement. Various media entities intervened in the case and argued against the motion to seal based on the public's constitutional and statutory right to know. *Pengra*, ¶¶ 1 and 5. One of the media entities, Montana Law Week, requested an award of attorney fees pursuant to § 2-3-221, MCA. The district court denied the plaintiff's motion to seal the settlement agreement and also denied Montana Law Week's request for attorney fees. The plaintiff appealed the court's refusal to seal the settlement agreement and Montana Law Week cross-appealed the attorney fees issue. *Pengra*, ¶ 6.

¶35 In addressing the attorney fees issue, we observed that, although Montana Law Week had prevailed in its position regarding the public's right to know, the State had never opposed that position. Rather, it was the plaintiff who disputed the public's right to know based on an assertion of a privacy interest in the settlement agreement. The State had not taken a position on either side of the issue. *Pengra*, ¶ 26. Thus, the State

> was faced with a dilemma when Pengra filed his motion to seal the settlement: If it had disclosed the settlement before the hearing and Pengra had later established a right to privacy, the State could have been liable for damages for violating that right. In addition, on and after the date on which the settlement was submitted for the District Court's approval, the court itself treated the agreement as temporarily sealed. Disclosure after that time would have exposed the State to a claim that it was in contempt of court.

*Pengra*, ¶ 26. In light of the State's neutral position in the face of competing constitutional interests, we concluded that the district court did not abuse its discretion in denying Montana Law Week's request that the State pay its attorney fees. *Pengra*, ¶ 27.

¶36 In the present case, the School District is in a position similar to that of the State in *Pengra*. The School District was presented with the Gazette's request for documents pursuant to the public's constitutional right to know. On the other hand, the School District also was presented with the Teachers' assertion of their constitutional right to privacy in those documents. Had the School District simply released the documents to the Gazette upon request, it may have been subject to a lawsuit by the Teachers for violating their privacy rights. Had the School District flatly refused to release the documents to the Gazette, it may have faced a lawsuit by the Gazette to enforce the public's right to know. Instead, in an effort to protect these competing interests, the

18

School District filed its declaratory judgment action and provided the District Court with the disputed documents so as to allow the court to balance the competing constitutional interests in light of the facts of the case. We conclude under these circumstances, as we did in *Pengra*, that seeking a judicial determination via constitutional balancing should not automatically subject the School District to paying an award of attorney fees.

¶37 In its order denying the Gazette's request for attorney fees, the District Court stated its rationale as follows:

> The Court finds that the Gazette is not entitled to attorney's fees . . . for four reasons. First, [the School District's] Petition was justified because of the competing interests of the public's right to know and the teachers' individual privacy rights and the issue of teachers' privacy rights in relation to Montana's "right to know" laws had yet to be determined by the Montana Supreme Court. Second, any delay caused by [the School District] is not sufficient to justify an award of attorney's fees and costs. Third, there is no evidence to suggest that [the School District] knowingly released information contained in the subject documents to the media when it allowed an investigator access to the documents. Finally, . . . [the School District] was trying to balance the competing interests of the privacy rights of the teachers and the citizens' right to know. As such, regardless of the outcome of the Petition, [the School District] is viewed as nothing more than a neutral party seeking guidance and can in no way be considered the "loser" in this action. . . . The Gazette has not convinced the Court that attorney's fees and costs are appropriate. [The School District] was justified in bringing the action, there is no evidence of wrongdoing by [the School District] and [the School District] cannot be viewed as having lost the action.

¶38 The District Court weighed the parties' respective positions on the issue of attorney fees and reached a measured determination on whether such an award was appropriate and necessary under the circumstances. We conclude that, in doing so, the District Court employed its conscientious judgment and did not exceed the bounds of

19

reasoning resulting in substantial injustice. Under such circumstances, it is not this Court's place to substitute its judgment for that of the District Court. We hold, therefore, that the District Court did not abuse its discretion in denying the Gazette's request for attorney fees.

¶39    Affirmed.

/S/ KARLA M. GRAY

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JIM RICE


Justice Brian Morris concurs.

¶40    I concur in the Court's determination that the Teachers' claim of a reasonable expectation of privacy in the documents at issue is moot in light of the fact that the District Court ordered the School District to turn over the documents and the School District complied. I generally concur with the Court's determination that the District Court did not abuse its discretion in denying the Gazette's request for attorney fees. I write separately, however, to emphasize my view that a governmental entity cannot immunize itself from potential liability for attorney fees pursuant to § 2-3-221, MCA, simply by filing a declaratory judgment action.

¶41    The Court reasons that the School District filed a declaratory judgment action and therefore the Gazette was not the "plaintiff" in this matter. *Supra* ¶ 29. As a result, the

20

Court rejects any effort by the Gazette to claim its attorney fees pursuant to § 2-3-221, MCA, on the ground that the statute provides that a district court may award attorney fees to a "plaintiff who prevails." *Supra* ¶ 29; *see also Yellowstone County v. Billings Gazette*, 2006 MT 218, ¶ 67, 333 Mont. 390, ¶ 67, 143 P.3d 135, ¶ 67 (Leaphart, J., concurring in part and dissenting in part). I disagree.

¶42 The Court's interpretation of § 2-3-221, MCA, will hinder the public's right to know established pursuant to Article II, Section 9 of the Montana Constitution. More importantly, the Court's interpretation of § 2-3-221, MCA, will have the unintended effect of encouraging, rather than discouraging, litigation surrounding these requests. In order to ensure a chance at collecting its attorney fees, a media organization, or private person for that matter, first must preserve their rights by initiating litigation before requesting the public documents. To ask first and litigate later runs the risk of having the public entity file a preemptive declaratory judgment action to immunize itself from any claim of attorney fees pursuant to § 2-3-221, MCA.

¶43 I recognize that the statute's plain language refers to "plaintiff who prevails." Section 2-3-221, MCA. I also recognize, however, that we have deviated slightly from a statute's plain language in order to uphold the Legislature's intent. For example, we interposed a "frivolous, unreasonable, or without foundation" requirement on a plaintiff's claim in reversing an award of attorney fees to a prevailing defendant in an action brought pursuant to the Montana Consumer Protection Act, § 30-14-133(3), MCA. *Tripp v. Jeld-Wen, Inc.*, 2005 MT 121, ¶¶ 35-37, 327 Mont. 146, ¶¶ 35-37, 112 P.3d 1018, ¶¶

21

35-37. Similarly in *State v. McGowan*, 2006 MT 163, 332 Mont. 490, 139 P.3d 841, we upheld a conviction under § 61-8-406, MCA, Montana's DUI Per Se statute, where the officer administered a field sobriety test approximately fifty minutes after the officer had first stopped the defendant. We interpreted the statute's plain language of "while driving" to encompass "a reasonable time after the alleged act" in upholding the conviction. *McGowan*, ¶ 17. Likewise I would interpret more broadly the phrase "plaintiff who prevails" under § 2-3-221, MCA, to encompass defendants who prevail in preemptive declaratory judgment actions of the variety at issue here. This interpretation would comport with the Legislature's intent of supporting a party who seeks to enforce our "constitutional right to know" under Article II, Section 9 of the Montana Constitution.

¶44 My interpretation would not necessarily entitle the Gazette to attorney fees as I agree with the Court that an award of attorney fees pursuant to § 2-3-221, MCA, is discretionary. I also agree with the Court that the District Court did not abuse its discretion in denying the Gazette's request for fees – but just barely. The Teachers at issue had a reasonable expectation of privacy during the pendency of the School District's investigation of the allegations. Mere allegations should not automatically trigger public disclosure. At the same time that the School District was withholding the requested documents from the Gazette, however, it was providing the documents to its outside investigator. Its outside investigator, in turn, issued a report revealing the contents of the documents to the public at a school board meeting. The public's right to

22

know clearly outweighed the Teachers' expectation of privacy once the School District's outside investigator had concluded her investigation and had disclosed the results of her investigation to the public.

¶45   The School District immediately should have provided the documents to the Gazette once its outside investigator disclosed the contents of the documents to the public.  Unlike the District Court, I would have awarded attorney fees to the Gazette for any amounts incurred beyond that point.  My mere disagreement, however, fails to overcome our longstanding and ineluctable rule that a district court abuses its discretion when it "acts arbitrarily without conscientious judgment or exceeds the bounds of reason resulting in substantial injustice."  *Campbell v. Canty*, 1998 MT 278, ¶ 35, 291 Mont. 398, ¶ 35, 969 P.2d 268, ¶ 35.  Thus, I reluctantly concur with the Court's conclusion that the District Court did not abuse its discretion in denying the Gazette's request for attorney fees.

/S/ BRIAN MORRIS


Justice John Warner joins in the foregoing concurrence.

/S/ JOHN WARNER

Justice James C. Nelson concurs and dissents.

¶46 I concur in the result of the Court's decision on Issue One; I do not agree with all that is said therein. I dissent from the Court's decision on Issue Two.

¶47 The District Court, correctly in my view, determined that the two school teachers, both occupying positions of public trust, had no reasonable expectation of privacy in alleged sexual misconduct that took place on the school campus in a common, unlocked area and that such conduct substantially compromised their ability to perform their jobs. The court concluded, appropriately, that the public's right to know outweighed any privacy interest claimed by the teachers. That should have been equally apparent—from the outset—to the School District.

¶48 Here, a student allegedly walked into an unlocked room between the locker rooms at the high school and encountered one teacher on top of the other with one of the teacher's bare buttocks showing. For the teachers involved and the School District to even entertain the idea that the teachers retained a subjective privacy interest in such conduct that society would consider reasonable is patently ridiculous. Indeed, not one case or authority is cited for the argument that such conduct by public school teachers is protected by the right of individual privacy. And, worse, for the teachers to argue on appeal that this sort of conduct is apparently capable of repetition, but might escape review, is truly mind-blowing. One is left to wonder just how often this sort of thing occurs on campus.

¶49    In my view, the Gazette was entitled to all documents and records pertaining to the investigation of this matter and any subsequent discipline imposed on the teachers as soon as the newspaper requested the documents and records from the School District. I reject the idea that the School District had to engage in litigation to balance a clear legal duty to disclose documents which were presumptively open to the public under Article II, Section 9 of the Montana Constitution, with a claim to a right of privacy that, under this Court's jurisprudence, simply did not exist from the beginning. *See Great Falls Tribune v. Sheriff,* 238 Mont. 103, 107, 775 P.2d 1267, 1269 (1989) (public employees in positions of trust have limited expectations of privacy in investigations into their conduct); *Citizens to Recall Mayor v. Whitlock*, 255 Mont. 517, 523, 844 P.2d 74, 78 (1992) (mayor has no privacy interest that society is willing to accept as reasonable where allegations involve his sexually harassing public employees); *Bozeman Daily Chronicle v. Police Dept.,* 260 Mont. 218, 226-27, 859 P.2d 435, 440 (1993) (off-duty police officer has no privacy interest in investigative materials linking him to the rape of a cadet at the law enforcement academy because he occupied a position of public trust and his alleged misconduct went directly to his breach of that duty); *Svaldi v. Anaconda-Deer Lodge County,* 2005 MT 17, ¶ 31, 325 Mont. 365, ¶ 31, 106 P.3d 548, ¶ 31 (public school teachers entrusted with the care and instruction of children occupy a position of public trust); *Jefferson County v. Montana Standard,* 2003 MT 304, ¶ 17, 318 Mont. 173, ¶ 17, 79 P.3d 805, ¶ 17 (county commissioner had no reasonable expectation of privacy

25

precluding disclosure to newspaper of information relating to her ability to perform her duties).

¶50 When a public agency such as the School District—*see Bryan v. District,* 2002 MT 264, ¶ 35, 312 Mont. 257, ¶ 35, 60 P.3d 381, ¶ 35—knows or with even minimal legal research should know that documents sought are public documents, then its duty is to promptly and fully disclose those when requested, and not to engage in litigation or the "let's-see-just-how-long-we-can-drag-this-out" approach that seems to increasingly characterize right to know cases. *See Havre Daily News, LLC v. City of Havre*, 2006 MT 215, 333 Mont. 331, 142 P.3d 864; *Yellowstone County v. Billings Gazette,* 2006 MT 218, 333 Mont. 390, 143 P.3d 135.

¶51 For these reasons, the Court's decision on the attorney fees issue is indefensible. The School District needlessly delayed the resolution of this matter by subjecting the Gazette to protracted litigation that was unnecessary. The School District gave the documents requested by the Gazette to an outside investigator who issued a report revealing the contents of the documents to the public during the pendency of these proceedings, without a court order and prior to the District Court's decision requiring disclosure to the Gazette. The School District forced the Gazette to litigate and expend attorney fees to obtain documents that it voluntarily gave to an investigator who, in turn, released the contents of the documents to the public. The Gazette's entirely proper and legal request for investigative and disciplinary documents was met by the School District, not with disclosure, but with a lawsuit—and then it unreasonably delayed providing the

26

documents to the trial court for *in camera* inspection. Moreover, important investigative documents were withheld—even from the District Court—for months. I cannot join either the District Court or this Court in characterizing the School District as just trying to balance competing right-to-know and privacy interests. Indeed, I question the *bona fides* of the School District in this whole matter.

¶52 The Gazette was required to litigate its entitlement to the documents at issue in order to uphold the public's right to know under Article II, Section 9; the Gazette was the prevailing party; it is entitled to its attorney fees.

¶53 I made this same argument in *Havre Daily News* and in *Yellowstone County*—obviously to no avail. *Havre Daily News*, ¶¶ 49-86 (Nelson, J., concurring and dissenting); *Yellowstone County*, ¶¶ 33-52 (Nelson, J., concurring). Even if the Gazette was not a prevailing "plaintiff" in this matter, it was entitled to attorney fees under § 27-8-313, MCA, and our decisions in *Trustees of Indiana University v. Buxbaum*, 2003 MT 97, 315 Mont. 210, 69 P.3d 663, and *Mountain West v. Brewer,* 2003 MT 98, 315 Mont. 231, 69 P.3d 652. Moreover, I would adopt the seven factors suggested by the Gazette. These factors should be taken into consideration in ruling on a fee request. *Yellowstone County*, ¶¶ 34-35 (Nelson J., concurring). And, I would hold that the District Court abused its discretion in not awarding the Gazette its attorney fees in this case.

¶54 Unfortunately, the mischief in the Court's decision is not only that it frustrates the constitutional presumption that all documents of every kind in the hands of public officials are amenable to inspection (*Great Falls Trib. v. Mont. Public Serv. Com.,* 2003

27

MT 359, ¶ 54, 319 Mont. 38, ¶ 54, 82 P.3d 876, ¶ 54), and that it stands on it's head the constitutional requirement that, even if—unlike here—the governmental entity is faced with legitimate privacy concerns, the right to know still trumps individual privacy interests unless the latter *clearly* outweighs the former (Mont. Const. art. V, § 9; *Yellowstone County*, ¶¶ 40-42 (Nelson, J., concurring)); but also, and worse, it encourages governmental entities to continue to play hide-the-ball when a newspaper requests public documents to which the media is constitutionally entitled. Indeed, our refusal to require the award of attorney fees to the newspaper in such cases rewards such intransigence. I continue to reject that approach.

¶55    I concur in the result of Issue One; I dissent from Issue Two.


                                        /S/ JAMES C. NELSON


Justice Patricia O. Cotter joins in the concurrence and dissent of Justice James C. Nelson.


                                        /S/ PATRICIA COTTER