*392 JUSTICE COTTER
delivered the Opinion of the Court.
¶1 The Billings Gazette (Gazette) sought access to public documents held by Yellowstone County (County) concerning civil litigation brought against the County and county officials. The County filed a declaratory action in the District Court seeking a determination of which documents must be disclosed to the Gazette, and which documents should be shielded from public inspection in the interest of individual privacy. The District Court determined that all documents requested by the Gazette should be disclosed with some redactions, and denied the Gazette’s request for costs and attorney fees. On appeal the Gazette seeks (1) access to the redacted portions of the Interim Chief Public Defender’s deposition, and (2) costs and attorney fees. We reverse and remand.
ISSUES
¶2 The issues on appeal are:
1. Whether Montana’s constitutional right to know gives the Gazette a right to inspect the entirety of the Interim Chief Public Defender’s deposition testimony.
2. Whether the Gazette should receive costs and attorney fees for enforcing the public’s right to know.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 Various lawsuits brought against the County concerning the operation of Yellowstone County’s Public Defenders Office (Office) spawned the dispute now before us. The facts underlying those cases are not at issue here, but are essential to understanding the case we now consider.
¶4 Yellowstone County’s Chief Public Defender, Sanford Selvey II (Selvey), resigned due in part to misconduct by Selvey toward Sarah Schopfer (Schopfer), an investigator who worked in the Office. Roberta Drew (Drew), then-Deputy Chief Defender, applied to be Interim Chief Defender, but the County hired Curtis Bevolden (Bevolden) instead. Bevolden later fired Drew. Consequently Drew initiated an internal County grievance proceeding which culminated in her reinstatement *393 as Deputy Chief Public Defender. Drew then filed a human rights complaint against the County, and also a federal discrimination suit against the County, Bevolden, and three other county officials not involved in this appeal.
¶5 The Gazette, a newspaper based in Billings, Montana, reported on the complaints filed by Schopfer and Drew and the ensuing litigation as it developed. Accordingly, the Gazette served the County with several Freedom of Information Act requests seeking documentation related to the County’s management of the Office and the expenditure of public funds for purposes of resolving Schopfer’s and Drew’s claims against county officials and employees. On February 6, 2003, the Gazette requested from the County copies of all public records documenting Selvey’s, Schopfer’s, and Drew’s “classification, status, salary, hire date, promotion, adverse actions, and formal complaints,” in addition to “records of employee evaluations.”
¶6 In response, on February 18, 2003, the County filed the declaratory judgment action which led to this appeal. In its complaint, the County named the Gazette, Selvey, Schopfer, and Drew as defendants and asked the District Court to “balance the public’s right to know and to examine public documents with the right of privacy maintained by the three individual defendants and determine, what if any documentation in the possession of [the County], should be given to the Billings Gazette.” For the next 18 months, the County took no action in the District Court to resolve its claim except to dismiss Drew as a defendant. Meanwhile, the Gazette continued to actively pursue production of the disputed documents and resolution of the conflict underlying the County’s declaratory action.
¶7 Pending resolution of the County’s claim, informal negotiations among the parties ensued. Drew and Selvey voluntarily provided their personnel files to the Gazette and the County produced several nonsensitive documents. Then, the Gazette learned that Bevolden and several other County officials had been deposed by the County during discovery in Drew’s federal discrimination suit. The Gazette asked for copies of the deposition transcripts.
¶8 The Gazette first requested copies of Bevolden’s transcripts on September 24, 2003. On October 24, 2003, County’s counsel wrote to the Gazette’s attorney, “Please be advised that I am having the depositions of... Mr. Bevolden ... [and others] copied at the present time and I will be sending you the transcripts shortly.” On November 18, 2003, however, the County reversed course and informed the Gazette the depositions would not be produced. Drew objected to *394 disclosure of some of the requested deposition transcripts due to Drew’s and her clients’ privacy interests. No objection was raised to disclosure of Bevolden’s deposition. The Gazette maintained that Drew’s objection had no legal bearing on the County’s obligation to produce the requested documents.
¶9 The Gazette filed a Motion to Compel on January 14,2004, as the depositions had not been produced. The proceeding was then briefly delayed for lack of a judge to hear the case. Then, the Gazette claims that at a scheduling conference in the District Court on March 17, 2004, the County again committed to provide copies of the depositions still in dispute, but then again reneged on that commitment. The County does not deny having agreed to produce the transcripts, but explains that each time deposition transcripts were about to be produced Drew, Selvey, and/or Schopfer threatened to sue the County for violation of their privacy rights.
¶10 Nearly eight months later, on August 6, 2004, the County produced redacted copies of Bevolden’s deposition less than an hour before the District Court’s hearing on the Gazette’s Motion to Compel. The District Court had not previously reviewed Bevolden’s deposition or any of the other depositions subject to the Motion, nor had it approved any redactions from the transcript.
¶11 On November 5, 2004, the District Court granted the Gazette’s Motion to Compel and ordered the County to produce in full all of the documents still in dispute “excepting only the ... portions wherein the individual right of privacy of non-parties outweighs the public right to know ....” The District Court authorized redactions of five pages from Bevolden’s deposition testimony given in Drew’s federal discrimination case against Bevolden for Drew’s wrongful termination as Chief Deputy Public Defender. The District Court further ordered the parties to pay their own attorney fees. The District Court made no findings of fact to support its Order.
¶12 The Gazette appeals from the District Court’s authorization of redactions from Bevolden’s deposition testimony, and from denial of the Gazette’s request for attorney fees.
STANDARD OF REVIEW
¶13 We review a district court’s conclusion of law regarding a constitutional question to determine whether it is correct. Bryan v. District, 2002 MT 264, ¶ 16, 312 Mont. 257, ¶ 16, 60 P.3d 381, ¶ 16.
¶ 14 An award of attorney fees is discretionary, and therefore a district court’s denial of attorney fees is reviewed for an abuse of discretion. *395 Investigative Records of City of Columbus Pol. Dept. (1995), 272 Mont. 486, 488, 901 P.2d 565, 566-67.
DISCUSSION ISSUE ONE
¶15 1. Whether the public has a right to inspect the entirety of the Interim Chief Public Defender’s deposition testimony.
¶16 On appeal the Gazette objects to the District Court’s determinations regarding only one contested deposition, that of Interim Chief Public Defender Bevolden. In reviewing the District Court’s authorization of redactions from Bevolden’s deposition, we must decide (1) whether Bevolden has a privacy interest in his own deposition testimony which clearly outweighs the public’s right to be informed of all of the deposition’s contents, and (2) whether the non-party individuals discussed by Bevolden in his deposition have privacy interests which prevent public disclosure of the deposition’s contents.
¶17 The Montana Constitution at Article II, Section 9 grants the public’s right to know:
Section 9. Right to know. No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.
Corresponding statutes protect public access to government documents, including § 2-6-102(1), MCA, which provides, “Every citizen has a right to inspect and take a copy of any public writing of this state....” We have previously concluded that the rights granted by the right to know provision extends not only to individuals, but also to media entities. Jefferson County v. Montana Standard, 2003 MT 304, ¶ 13, 318 Mont. 173, ¶ 13, 79 P.3d 805, ¶ 13 (citation omitted).
¶18 As stated in Becky v. Butte-Silver Bow Sch. Dist. 1 (1995), 274 Mont. 131, 136, 906 P.2d 193, 196, and reiterated in Bryan, ¶ 33:
Any review of Article II, Section 9, of the Montana Constitution necessarily involves a three-step process. First, we consider whether the provision applies to the particular political subdivision against whom enforcement is sought. Second, we determine whether the documents in question are “documents of public bodies” subject to public inspection. Finally, if the first two requirements are satisfied, we decide whether a privacy interest is present, and if so, whether the demand of individual privacy clearly exceeds the merits of public disclosure.
*396 In the instant case, the County does not dispute that it is a political subdivision against which the right to know provision is enforceable. Neither does the County contest that Bevolden’s deposition is a document of a public body subject to public inspection. As such, we turn our discussion to the final steps of the right to know test to determine (1) whether privacy interests are present, and (2) if so whether the demand for individual privacy clearly exceeds the merits of public disclosure.
¶19 It is well established that Montana’s constitutional right to know is not absolute. See Jefferson, ¶ 13, citing Bozeman Daily Chronicle v. Police Dept. (1993), 260 Mont. 218, 224, 859 P.2d 435, 439, and In re Lacy (1989), 239 Mont. 321, 325, 780 P.2d 186, 188. Public disclosure is not required in cases where the demand for individual privacy clearly exceeds the public’s right to know. Bryan, ¶ 33. The text of Montana’s constitutional right to know provision is directly followed by the individual privacy right, found at Article II, Section 10 of the Montana Constitution, which provides:
Section 10. Right of privacy. The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.
¶20 Determining whether public disclosure is required demands a balancing of the public’s right to know with competing privacy interests “in the context of the facts of each case ....’’Associated Press, Inc. v. Department, 2000 MT 160, ¶ 24, 300 Mont. 233, ¶ 24, 4 P.3d 5, ¶ 24, quoting Missoulian v. Board of Regents of Higher Educ. (1984), 207 Mont. 513, 529, 675 P.2d 962, 971. To determine whether an individual has a protected privacy interest under Article II, Section 10, of the Montana Constitution we apply a two-part test. Jefferson County, ¶ 15 (citation omitted). A constitutionally protected privacy interest exists when a person has a subjective or actual expectation of privacy that society is willing to recognize as reasonable. Lincoln County Com’n v. Nixon, 1998 MT 298, ¶ 16, 292 Mont. 42, ¶ 16, 968 P.2d 1141, ¶ 16 (citation omitted).
¶21 In this case, we first must determine whether Bevolden has a constitutionally protected privacy interest in the transcript of his deposition which society is willing to recognize as reasonable. We have previously determined that society is not willing to recognize as reasonable the privacy interest of individuals who hold positions of public trust when the information sought bears on that individual’s ability to perform public duties. See Great Falls Tribune v. Sherriff (1989), 238 Mont. 103, 107, 775 P.2d 1267, 1269 (the public’s right to *397 know outweighed the privacy interests of three disciplined police officers in the public release of their names because police officers hold positions of “great public trust”); Bozeman Daily Chronicle, 260 Mont. at 227, 859 P.2d at 440-41 (investigative documents associated with allegations of sexual intercourse without consent by an off-duty police officer were proper matters for public scrutiny because “such alleged misconduct went directly to the police officer’s breach of his position of public trust...”); and Svaldi v. Anaconda-Deer Lodge County, 2005 MT 17, ¶ 31, 325 Mont. 365, ¶ 31, 106 P.3d 548, ¶ 31 (a public school teacher entrusted with the care and instruction of children held a position of public trust and therefore the public had a right to view records from an investigation into the teacher’s abuse of students).
¶22 Public defenders, as the officers of our courts charged with safeguarding the public’s fundamental constitutional rights to counsel and a fair and speedy trial, play an essential role in preserving public confidence in our judicial system and preserving these rights for every member of society. As Interim Chief Public Defender for Yellowstone County, Bevolden held a position of public trust. He was employed by the County and paid with public funds to provide effective legal counsel to indigent persons charged with crimes, and to direct and manage the Office in a manner conducive to ensuring that attorneys under his supervision also provided effective counsel to clients. Consequently, Bevolden’s subjective expectation of privacy was diminished as to matters involving his performance of official duties as Interim Chief Public Defender. Moreover, there is no evidence in the record to suggest that Bevolden actively asserted a privacy interest in his deposition transcript.
¶23 We determine, after reviewing unedited copies of Bevolden’s deposition, that the information contained in the redacted portions bears directly on Bevolden’s professional judgment, the management decisions he made as Interim Chief Public Defender, and his official conduct. Therefore, the public’s right to access Bevolden’s deposition clearly outweighs any privacy interest he might otherwise assert in this material.
¶24 Next, we turn to the question of whether the non-party individuals discussed by Bevolden in his deposition have protected privacy interests in the portions of Bevolden’s testimony redacted by the District Court. Again we apply the privacy test to determine whether the public’s right to know clearly outweighs reasonable expectations of privacy that non-parties might have in Bevolden’s testimony. The Gazette argues that the County raises for the first time *398 on appeal the privacy interests of non-party individuals. However, on review of the August 6, 2004 hearing transcript, we conclude that the County made arguments in the District Court which can reasonably be interpreted as asserting the privacy interests of non-parties. Also, we note that the Gazette agreed in the District Court, and has again agreed on appeal, to redaction of the names of non-parties in the interest of their privacy. We agree that redacting the names of non-parties from Bevolden’s deposition is appropriate here. However, further redactions shielding more than the names of non-parties are not warranted.
¶25 We have previously determined that redacting individuals’ names from public records sufficiently protects their privacy, while still allowing disclosure of relevant public information, even in the context of criminal parole files. See Worden v. Montana Bd. of Pardons and Parole, 1998 MT 168, ¶ 29, 289 Mont. 459, ¶ 29, 962 P.2d 1157, ¶ 29 (omitting from parole files the names and addresses of letter writers protected privacy sufficiently to allow the public to view contents of letters). We have also interpreted the right to know as permitting access to the “widest breadth of information possible,” even where the individuals whose privacy interests were implicated did not work in the public realm. See Lincoln County Com’n, ¶ 21, discussing In re Lacy, 239 Mont. 321, 780 P.2d 186 (insurance company invoked the right to know to gain access to medical records of deceased insured held by the government).
¶26 The redacted portions of Bevolden’s deposition clarify what Bevolden knew about the non-parties’ work history and illuminate Bevolden’s decision to hire them instead of Drew. Bevolden’s hiring decisions, in light of his prior knowledge of the non-parties’ job performance, were among the reasons Drew sued Bevolden and the County for discrimination. Bevolden’s testimony therefore goes directly to Drew’s claims. Notably, neither of the non-parties here asserted on their own behalf a privacy interest in Bevolden’s testimony. Additionally, both of the non-parties named by Bevolden were public defender attorneys employed by the County and paid with public funds to represent indigent criminal defendants. It bears emphasis that even public employees in positions of public trust retain privacy interests in their personal information and conduct unrelated to their job performance. However, our inspection of Bevolden’s deposition reveals that his discussion about non-parties was limited to his knowledge of those non-parties’ job history and performance of official duties.
¶27 We conclude that on the facts presented here the public’s right *399 to know about Bevolden’s management of the Office and the quality of representation afforded by the Office under Bevolden’s direction clearly outweighs any privacy interest non-parties may have in the redacted portions of Bevolden’s testimony. Therefore, the public has a right to inspect the entirety of Bevolden’s deposition so long as the names of the non-parties are withheld.
ISSUE TWO
¶28 2. Whether the Gazette should receive costs and attorney fees for enforcing the public’s right to know.
¶29 The Gazette appeals from the District Court’s denial of its request for attorney fees, claiming that the County’s conduct unnecessarily delayed access to public documents, thereby justifying an award of fees and costs. It further argues that the District Court abused its discretion when it failed to articulate in its Order its reasons for denying the Gazette an award of fees, and because the District Court has in essence allowed the County to misuse its court action without consequence. In response, the County argues that the District Court has the discretion to grant or deny an award of attorney fees and that the court did not abuse its discretion given the many reasons why it took eighteen months to resolve the disputes presented here.
¶30 We agree that an award of attorney fees is discretionary. See Matter of Investigative Records (1994), 265 Mont. 379, 382, 877 P.2d 470, 472 (where we reviewed the legislative history leading to the adoption of § 2-3-221, MCA, and concluded that “the clear intent of the statute is that an award of attorneys fees is discretionary” and accordingly does not mandate attorney fee awards for prevailing parties in suits brought under Article II, Section 9 of the Montana Constitution). However, it is well-established that outright denial of a motion for attorney fees without rationale, is “not an exercise of discretion, but is an abuse of that discretion.” Matter of Investigative Records, 265 Mont. at 383, 877 P.2d at 472, citing Gursky v. Parkside Professional Village (1993), 258 Mont. 148, 152, 852 P.2d 569, 571. Moreover, we have previously held that due to the “public benefits gained” by the vindication of the public’s right to know, the costs of litigation to secure these rights should be spread among beneficiaries. Associated Press, Inc., ¶ 43.
¶31 We conclude that the District Court erred in denying the Gazette’s motion for attorney fees without rationale. Matter of Investigative Records, 265 Mont. at 383, 877 P.2d at 472. Further, we hold that the District Court’s discretion to deny attorney fees in right *400 to know cases is not unfettered. Accordingly, we remand to the District Court for reconsideration of the Gazette’s motion for attorney fees in light of the discussion set forth above.
CONCLUSION
¶32 For the foregoing reasons, we reverse the District Court’s authorization of redactions which eliminate more than non-party names from Bevolden’s deposition testimony, and reverse and remand for further consideration of the Gazette’s request for attorney fees and entry of an order thereon with supporting rationale.
JUSTICES NELSON, WARNER, MORRIS and RICE concur.