No. DA 06-0074

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 115

BOARD OF TRUSTEES, CUT BANK PUBLIC SCHOOLS,

        Petitioner and Respondent,

    v.

CUT BANK PIONEER PRESS,

        Respondent and Appellant.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

CUT BANK PIONEER PRESS,

        Petitioner and Appellant,

    v.

BOARD OF TRUSTEES, CUT BANK PUBLIC SCHOOLS,

        Respondent and Respondent.

APPEAL FROM:    The District Court of the Ninth Judicial District,
In and For the County of Glacier, Cause Nos. DV 05-081 and DV 05-082,
Honorable Marc G. Buyske, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Peter Michael Meloy and Robin A. Meguire, Meloy Trieweiller,
Helena, Montana

        For Respondent:

                Debra A. Silk and Tony Koenig, Montana School Boards Association,
Helena, Montana

        For Amici Curiae:

                David K. W. Wilson, Jr., and James P. Reynolds, Reynolds,
Motl & Sherwood, P.L.L.P., Helena, Montana

                     Submitted on Briefs:  October 4, 2006
                                 Decided:  May 8, 2007

Filed:

_____
                        Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Cut Bank Pioneer Press (Pioneer) appeals from the order of the Ninth Judicial District Court, Glacier County, denying its request for disclosure of records regarding the imposition of student discipline. Pioneer brought this action under the "right to know" provision of Article II, Section 9, of the Montana Constitution to gain access to documents reflecting disciplinary actions taken with regard to certain Cut Bank High School students involved in a BB gun incident. We reverse.

¶2 We consider the following issues on appeal:

¶3 (1) Does Pioneer have standing to pursue this appeal?

¶4 (2) Did the District Court err when it denied Pioneer's request to obtain the student disciplinary records:

> a. Does the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, (FERPA) prohibit the release of the redacted records?
>
> b. Does the Montana Constitution require disclosure of the redacted records?

## BACKGROUND

¶5 On September 26, 2005, the Board of Trustees, Cut Bank Public Schools (Board), held a properly noticed meeting to determine whether two students of the Cut Bank Public Schools should be disciplined for their part in shooting other students with plastic BBs on school property, and, if so, what discipline should be imposed. Members of the public, including a representative of Pioneer, attended the meeting.

¶6 The chairperson of the Board made an initial determination, pursuant to § 2-3-203(3), MCA (2005), that the demands of individual privacy clearly exceeded the merits

3

of public disclosure and ordered the Board meeting closed to the public. At some point during the closed meeting, the students or their representatives were asked to waive their right to privacy and each declined to do so. In the closed meeting, the Board met with the students involved and heard from several character witnesses who were permitted to attend the meeting. While in the closed session, the Board determined what disciplinary action to take and then reconvened in open session. A member of the Board, upon advice of counsel who was present, moved the Board to proceed as determined in the closed session, without specifying what action would be taken with respect to the students, but apparently referenced the students involved by an assigned student number. The motion was approved.

¶7    The Board's previous practice regarding student discipline issues was to publicly reveal the discipline meted out to students by referencing each student by an anonymous number only. Leanne Kavanagh (Kavanagh), the editor of Pioneer, asked the Board members why they had deviated from their previous practice and was told that the Board's attorney advised them that the disciplinary action taken was not public information due to privacy concerns. The Board informed Kavanagh that if she wanted to know the outcome of the closed session, she would have to ask the students' parents who were in attendance. Kavanagh did this and was informed by one of the parents that the Board had told the parents not to reveal what disciplinary actions were imposed.

¶8    Kavanagh then emailed Wade Johnson (Johnson), the Superintendent of the Cut Bank Schools, and requested documentation relating to the disciplinary actions taken against the students involved. Kavanagh did not request the students' names and

4

specifically asked that the students be identified by assigned numbers or that the names be redacted. Johnson did not provide Kavanagh with the requested information, and instead, the Board filed a petition in the District Court asking for an *in camera* inspection and for the court to determine whether the disciplinary records should be disclosed. Pioneer followed by filing a petition in the District Court to obtain the "discipline order" or other document reflecting the action taken by the Board. Pioneer's petition requested that the District Court order the Board to make public all documents in its custody, related to the discipline given to the students caught shooting BBs with any personally identifiable information redacted. At the evidentiary hearing, Pioneer amended this request to seek only the disciplinary action taken and the anonymous student identification number for the students involved.

¶9 The District Court consolidated the two petitions and conducted an evidentiary hearing on October 26, 2005. Kavanagh and Michael Koepke, chairperson of the Board, both testified at the hearing.

¶10 The District Court based its decision almost entirely on the federal Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g (FERPA), which it applied to the results of the disciplinary proceedings conducted by the Board and prohibited the Board from disclosing "the names of the students, any violations committed, and any actions imposed" without the consent of the students and their parents. The District Court concluded that an "analysis of the interaction of Article II, § 9 and Article II, § 10 of the Montana Constitution in this situation is not necessary" because "FERPA does apply to the records of the disciplinary proceeding, and . . .

preempts any Montana constitutional or statutory law with respect to the disclosure of such records or results . . . ." The court further held that no relief is available to Pioneer under Article II, Section 9, of the Montana Constitution, or under § 2-6-102, MCA. Pioneer appeals.

## STANDARD OF REVIEW

¶11 This Court reviews a district court's conclusions of law, including issues of constitutional law, to determine whether they are correct. *Bryan v. District*, 2002 MT 264, ¶ 16, 312 Mont. 257, ¶ 16, 60 P.3d 381, ¶ 16.

## DISCUSSION

¶12 *1. Does Pioneer have standing to pursue this appeal?*

¶13 As a preliminary matter, the Board asserts that Pioneer lacks standing to bring a petition under Article II, Section 9, of the Montana Constitution and to pursue an appeal before this Court. The Board contends that Pioneer failed to allege how it has been personally injured, or threatened with immediate injury, by the alleged constitutional violation. Pioneer responds that it asserted a personal interest in the records at issue and alleged an injury resulting from the denial of those records, and thus has standing to pursue this appeal.

¶14 The general rule for prohibiting new issues on appeal does not apply to jurisdictional issues such as standing. *Bryan,* ¶ 19. Thus, the issue of standing is properly before this Court.

¶15 "Standing is a threshold jurisdictional question 'especially' in cases 'where a statutory or constitutional violation is claimed to have occurred . . . .'" *Fleenor v. Darby*

*School Dist.*, 2006 MT 31, ¶ 7, 331 Mont. 124, ¶ 7, 128 P.3d 1048, ¶ 7.  To establish standing to bring suit, the complaining party must clearly allege a past, present, or threatened injury to a property or civil right.  *Fleenor*, ¶ 9.  Further, the alleged injury must be distinguishable from the injury to the public generally, but the injury need not be exclusive to the complaining party.  *Fleenor*, ¶ 9 (citing *Bryan*, ¶ 20).  A plaintiff must have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens presentation of issues."  *Bryan*, ¶ 20 (quoting *District No. 55 v. Musselshell County*, 245 Mont. 525, 528, 802 P.2d 1252, 1254 (1990).  Persons who fail to allege any personal interest and injury, beyond that common interest of all citizens and taxpayers, lack standing.  *Fleenor*, ¶ 9 (citation omitted).

¶16     The Montana Constitution at Article II, Section 9, grants the public's right to know:

> Section 9. **Right to know.** No person shall be deprived of the right to examine documents or to observe the deliberation of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

Corresponding statutes protect public access to government documents, including § 2-6-102(1), MCA, which provides, "[e]very citizen has a right to inspect and take a copy of any public writings of this state . . . ."  The rights granted by the right to know provision extend to media entities as well.  *Yellowstone County v. Billings Gazette*, 2006 MT 218, ¶ 17, 333 Mont. 390, ¶ 17, 143 P.3d 135, ¶ 17 (citation omitted).

¶17     In *Fleenor*, the plaintiff filed suit alleging that her right to know had been violated when the school district failed to notify her of the decisions and related school board

votes leading to the hiring of a school superintendent. The district court dismissed Fleenor's complaint for lack of standing and, on appeal, this Court affirmed. Although noting that Montana's Constitution is to be "broadly and liberally construed," *Fleenor*, ¶ 8, we determined that "[e]ven a broad reading of Article II, Sections 8 and 9 does not excuse Fleenor from meeting the well established standing requirements reflected in our jurisprudence"—that a plaintiff must allege a past, present or threatened injury, and allege an injury that is distinguishable from the injury to the general public. *Fleenor*, ¶ 9. We concluded that Fleenor lacked standing because she "insists no allegation of injury is necessary, [and] she makes none. In fact, she does not even allege that the District's faulty notice somehow injured or threatened to injure her." *Fleenor*, ¶ 11.

¶18 Here, Pioneer made a specific request for documents, and was denied access to those documents. At the hearing, Pioneer, through Kavanaugh, testified about the information it sought and the reason for the request:

> Q. [by counsel]: So to answer the judge's question, what is it that you want, the names of these kids?
>
> A. [by Kavanagh]: No.
>
> Q. Do you want the names of the parents?
>
> A. No. All I requested from the School Board, and I believe when I e-mailed Wade the document I said, all I want is—just give me the [anonymous] student numbers and what the punishment or discipline was and how the Board decided on how to handle this issue with these kids, that's all we want.
>
> Q. Why would you be interested in that information?
>
> A. Well partly because it's my job. We cover the affairs of the city, the schools, the county, and if they're taking an action against a student I think

8

the public needs to know what the consequences of a certain behavior are going to be.

¶19 Unlike the request in *Fleenor*, Pioneer asserted a personal interest in the records at issue, and alleged an injury resulting from the denial of those records. The interest was personal to Pioneer because the records were necessary for Pioneer's work. As evidenced from the hearing testimony, Pioneer voiced a genuine interest in this information, and thus demonstrated the required "true stake in government action." *Fleenor*, ¶ 8. Pioneer clearly stated an interest in the redacted student disciplinary records which extended beyond the "common interest of all citizens." *Fleenor*, ¶ 9. Pioneer established its injury as well. The Board's failure to provide the records injured Pioneer's ability to exercise its right to know the actions taken by the government under Article II, Section 9, and its freedom of the press under Article II, Section 7, to report on the actions of government.

¶20 We conclude that Pioneer has the requisite standing to pursue this matter.

¶21 *2. Did the District Court err when it denied Pioneer's request to obtain the student disciplinary records:*

> **a. Does the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, (FERPA) prohibit the release of the redacted records?**

¶22 Pioneer argues that the District Court erred in holding that FERPA precludes disclosure of the Board's records. Pioneer contends that FERPA does not protect the information it has requested because: (1) the records requested are not "education records" under FERPA; (2) FERPA does not prohibit disclosure of redacted records; and (3) FERPA only prohibits the disclosure of "personally identifiable information."

9

Alternatively, Pioneer argues that even if FERPA did protect the records at issue, it does not preempt the Montana Constitution.

¶23 The Board responds that the District Court correctly concluded that FERPA prohibits the School District from disclosing the requested records to Pioneer without parental consent. The Board contends that FERPA prohibits the release of identifying information regarding students, that Montana school districts are required by state law to comply with those restrictions, and that the records in question contain identifying information regarding the students.

¶24 FERPA, also known as the Buckley Amendment to the Privacy Act of 1974, was enacted by Congress to protect the privacy of students and their parents. 20 U.S.C. § 1232g. FERPA conditions the receipt of federal funding by educational institutions on their compliance with certain prescribed procedures allowing access to such records by students and parents and restricting access by other parties. 20 U.S.C. § 1232g(a). FERPA has been described as essentially "spending legislation" and its disclosure provisions do not create individual rights. *Gonzaga University v. Doe*, 536 U.S. 273, 279-81, 122 S. Ct. 2268, 2273-74 (2002).

¶25 The Board cites to numerous statutes and administrative rules in support of its argument that FERPA prohibits the release of the disciplinary records. Admin. R. M. 10.55.909(2) provides that "[a]ll educational records collected and maintained by a school shall be kept in a confidential manner according to the implementing regulations of the Family Educational Rights and Privacy Act (FERPA) at 34 CFR Part 99." The Board notes that Admin. R. M. 10.55.909 requires Montana school districts to "establish

10

policies and procedures for the use and transfer of student records that are in compliance with state and federal laws governing individual privacy." In turn, "student records" include such items as the students' names and addresses, their parents' names, their birth dates, their levels of achievement, and their immunization records. Admin. R. M. 10.55.909(1). Each school must maintain a record of any disciplinary action that is educationally-related—that is, an action that results in the expulsion or out-of-school suspension of the student. Admin. R. M. 10.55.910.[1]

¶26 However, Pioneer is not arguing that FERPA does not apply to education records of school districts in Montana, nor that FERPA does not prohibit disclosure of those records—it is arguing that FERPA does not prohibit the public release of redacted records regarding board disciplinary actions which contain no personally identifiable information. In response, the Board argues that the "[r]elease of the records, even with the students' names redacted, would constitute a violation of FERPA, the federal rules, and the Administrative Rules of Montana." However, we disagree.

¶27 FERPA defines "education records" as "those records, files, documents, and other materials which (i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A). Other jurisdictions have held that disciplinary records do not constitute "education records" as defined by FERPA. *See*

---

[1]The Board argues that these regulations and related federal regulations also prohibit the disclosure of "student identification numbers." However, Pioneer has not requested the release of numbers assigned to particular students for identification purposes within the school's internal administrative system. Rather, Pioneer has requested only the generic number used to refer to a disciplined student anonymously.

11

*e.g.*, *State ex rel. The Miami Student v. Miami Univ.*, 680 N.E.2d 956 (Ohio 1997), *cert. denied*, 522 U.S. 1022, 118 S. Ct. 616 (1997) (student disciplinary records were not education records under FERPA and disclosure was required pursuant to state's open record laws); *Bauer v. Kincaid*, 759 F. Supp. 575 (W.D. Mo. 1991) (campus disciplinary records were not protected by FERPA and were subject to disclosure under state's public records act); *Red & Black Pub. Co. v. Board of Regents*, 427 S.E.2d 257 (Ga. 1993) (discipline records not "educational records" within the meaning of FERPA and therefore subject to disclosure under Georgia's open records law).

¶28  Further, other jurisdictions have held that once a record is redacted, it no longer contains "information relating directly to a student" and is therefore not an educational record under FERPA. *See e.g. Osborn v. Board of Regents of University of Wisconsin System*, 647 N.W.2d 158, 168 n. 11 (Wis. 2002) ("once personally identifiable information is deleted, by definition, a record is no longer an education record since it is no longer directly related to a student"); *Unincorporated Operating Div. of Indiana Newspapers, Inc. v. Trustees of Indiana Univ.*, 787 N.E.2d 893 (Ind. App. 2003) (materials not "education records" if information which could lead to the identity of students redacted).

¶29  In support of its contrary decision, the District Court relied on a single federal district court case, *U. S. v. Miami University*, 91 F. Supp. 2d 1132 (S.D. Ohio 2000), *aff'd*, 294 F.3d 797 (6th Cir. 2002).  The court in *Miami University* found that "university disciplinary records fall within the definition of 'education records' as stated in 20 U.S.C. § 1232g." *Miami University*, 91 F. Supp. at 1148.  However, the Sixth Circuit Court of

12

Appeals, while affirming the district court, made clear that disciplinary records which contain no personally identifiable information or have such information redacted are not protected by FERPA:

> [A] denial of access to student disciplinary records does not prevent *The Chronicle* from obtaining information about crime on university campuses. Pursuant to the district court's injunction, *The Chronicle* may still request student disciplinary records that do not contain personally identifiable information. Nothing in the FERPA would prevent the Universities from releasing properly redacted records.

*Miami University*, 294 F.3d at 824.

¶30 Pioneer specifically requested in its prayer for relief that the students' names be redacted from the disciplinary records:

> Petitioner respectfully prays this Court to enter judgment in its favor and award relief including: (1) That Respondent be ordered to make public all documents in its custody, related to the discipline given to the students caught shooting plastic BB's with any personally identifiable information redacted[.]

Pioneer is not seeking any information that would personally identify any of the students involved. Since FERPA does not prohibit disclosure of records that do not reveal personally identifying information, there is no basis under FERPA for the Board's refusal to release the public documents to Pioneer.

¶31 Although *Miami University* does arguably demonstrate that the federal courts are split on whether student disciplinary records constitute "education records" under FERPA, that case is consistent with the other authority in concluding that FERPA does not prohibit the release of records which have all personal information redacted. Thus, regardless of whether disciplinary records constitute "education records" under FERPA,

13

or whether redacted records remain "education records" under FERPA, the end result is clear: FERPA does not prevent the public release of redacted student disciplinary records, and the District Court erred in so concluding herein.

### b. Does the Montana Constitution authorize disclosure of the redacted records?

¶32 Because we have concluded that FERPA does not prohibit the release of the records, we need not address Pioneer's argument that FERPA does not preempt the Montana Constitution. However, the Board further asserts that even if FERPA does not prohibit the School District from releasing the records, the students' and their parents' privacy rights under the Montana Constitution nonetheless prohibit disclosure. Noting that under Article II, Section 9, the right to examine documents and observe the deliberations of public bodies is limited "in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure," the Board contends the students and parents have an actual expectation of privacy in the records of the disciplinary actions, and this expectation is one that society deems reasonable. Furthermore, the Board asserts that there is no compelling state interest mandating the release of these records to the media.[2]

¶33 Pioneer responds that the Board's refusal to disclose the records was violative of the Constitution. Pioneer contends that the records at issue are public documents under Article II, Section 9, of the Montana Constitution, and that privacy concerns do not justify the Board's refusal to disclose the redacted versions of those documents.

---

[2]Pioneer has not challenged the Board's decision to close the meeting to consider what disciplinary action to take.

¶34    We stated in *Becky v. Butte-Silver Bow School Dist. No. 1*, 274 Mont. 131, 136, 906 P.2d 193, 196 (1995), and reiterated in *Bryan*, ¶ 33, and *Yellowstone County*, ¶ 18, that:

> Any review of Article II, Section 9, of the Montana Constitution necessarily involves a three-step process. First, we consider whether the provision applies to the particular political subdivision against whom enforcement is sought. Second, we determine whether the documents in question are "documents of public bodies" subject to public inspection. Finally, if the first two requirements are satisfied, we decide whether a privacy interest is present, and if so, whether the demand of individual privacy clearly exceeds the merits of public disclosure.

The parties do not dispute that the school district is a "public body" for the purposes of Article II, Section 9, and that the requested documents are public documents. We have previously held that documents relating to disciplinary measures taken by a public body are public documents. *Great Falls Tribune Co., Inc. v. Cascade County Sheriff*, 238 Mont. 103, 775 P.2d 1267 (1989).

¶35    Thus, we turn to whether any privacy interests here clearly exceed the merits of public disclosure. To determine whether an individual has a constitutionally protected privacy interest, the Court applies a two-part test: (1) whether the person involved had a subjective or actual expectation of privacy; and (2) whether society is willing to recognize that expectation as reasonable. *Barr v. Great Falls Intern. Airport*, 2005 MT 36, ¶ 18, 326 Mont. 93, ¶ 18, 107 P.3d 471, ¶ 18.

¶36    It is clear that Pioneer is not requesting the identity of the students involved in the BB shooting incident; rather, it simply wants to know what disciplinary action the Board took. The discipline imposed by the Board on students of the school, particularly

15

students involved in potentially injurious actions, is a matter of public concern. The Board's assertion that unidentified students have a privacy interest in the disciplinary measures imposed upon them which would prohibit a general report to the public about the Board's action in the matter is unpersuasive. Disclosing that "Student #3 was suspended from school for two days for shooting BBs on school property" does not violate the student's or that student's parents' rights to privacy because such a report does not reveal the identity of "Student #3." Any subjective expectation of privacy here, given Pioneer's limited request, would not be considered reasonable by society and is outweighed by the merits of public disclosure.

¶37 The Board urges us to consider that Kavanagh testified that she already knew which students and parents were involved by what she had "heard" around town, which would allow Pioneer, who the Board notes is not obligated to respect the students' privacy, "to publish a story containing the information from the [discipline] records with the identifying information already in their possession." However, the identifying information in Kavanagh's prior possession was disclosed to her, not by governmental action, but by small town rumor mill. Although possibly a superior conduit of information, such revelations do not factor into the constitutional balancing test nor mitigate the government's constitutional obligations.

¶38 We conclude that Pioneer's request for the redacted documents regarding the School Board's disciplinary action was not clearly outweighed by any privacy interests at issue. Pioneer is entitled to a redacted copy of the Board's records regarding the discipline measures imposed upon the students.

16

¶39 For the foregoing reasons, the decision of the District Court is reversed. This matter is remanded for further proceedings consistent herewith.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ PATRICIA COTTER

Justice James C. Nelson concurs.

¶40 I concur in our decision. I write separately to comment briefly on this Court's decision in *Fleenor v. Darby School Dist.*, 2006 MT 31, 331 Mont. 124, 128 P.3d 1048. There have been few decisions of this Court in recent memory which have been so misunderstood and over-read. Media representatives read the decision as providing public officials carte blanche to flaunt Article II, Section 9, and Montana's open meeting laws, and some school boards, trade organizations and public bodies appear to have agreed with the media's assessment.[1] Neither was correct.

¶41 As our Opinion here points out, standing to sue is a threshold requirement under American jurisprudence for commencing litigation. We stated in *Armstrong v. State,*

---

[1] *See* "*Court's Spin Curtails Public's Rights,*" Missoulian (February 24, 2006) (available at http://www.missoulian.com/articles/2006/02/28/opinion/opinion6.prt); Gwen Florio, "*High Court School Board Ruling Stirs Up Sunshine Laws,*" Great Falls Tribune (March 8, 2006); *"The Court and Open Meetings,"* Helena IR (March 9, 2006) (available at http://www.helenair.com/articles/2006/03/09/opinions_top/a04030906_01.prt); Watson, Cartoon, Billings Outpost (March 16, 2006).

1999 MT 261, ¶ 6, 296 Mont. 361, ¶ 6, 989 P.2d 364, ¶ 6 (citation omitted), that the test for standing is whether the complaining party alleges a past, present or threatened injury to a property or civil right. The harm alleged can be common to the general public, but must still affect the individual petitioner in ways not common to the public. *Armstrong*, ¶¶ 6-7 (citations omitted). Without a standing requirement, anybody could sue anyone for anything—even if the plaintiff had absolutely nothing to lose or gain in the litigation.

¶42  While denominated as a standing problem, *Fleenor*, more accurately, involved a pleading problem. Fleenor's complaint and amended complaint were so poorly drafted that she failed to allege any personal injury or stake in the litigation—the fundamental requirement to begin any lawsuit. As we noted, the threshold for standing is not high, but it does—and must—exist. This Court was very careful to say that and only that. *See Fleenor*, ¶¶ 11-12.

¶43  *Fleenor* never did stand for the proposition, nor can it be read as a diminution of the public's fundamental constitutional right to know or the abrogation of Montana's opening meeting laws—all of the hype and hoopla to the contrary, notwithstanding.

¶44  I concur.

/S/ JAMES C. NELSON

¶45  Justice Patricia O. Cotter joins in the Concurrence of Justice James C. Nelson. As the author of *Fleenor*, I concur in both the Opinion and Justice Nelson's Concurrence.

/S/ PATRICIA COTTER

3