CHIEF JUSTICE McGRATH,
specially concurring.
¶31 While I concur with the majority decision to affirm, I do so for different reasons.
¶32 As the dissent points out, the internal investigation conducted by the Billings Police Department involved interviews with Anthony conducted pursuant to what is commonly referred to as the Garrity Rule, based upon Garrity v. New Jersey, 385 U.S. 493, 87 S. Ct. 616 (1967). As such, Anthony was compelled to respond (subject to termination of her employment) to the questions asked in the internal investigation, but her responses could not be used in a subsequent criminal proceeding.
¶33 Given the Garrity warnings provided to Anthony, it is logical to conclude that she could have had an actual expectation of privacy in the interview proceedings and related correspondence from her *533 employer.[1]
¶34 Under the test adopted in Montana Human Rights Div. and followed by the majority, the determination of whether the employee had an actual subjective expectation of privacy must be a factual determination made by the district court. That factual determination should not be short-circuited as a matter of law based upon the nature of the employment, and in my view our previous cases should not necessarily be construed to support such a result. See Great Falls Tribune Co. v. Cascade County Sheriff, 238 Mont. 103, 775 P.2d 1267 (1989) (ordering the release of names of police officers who were terminated or disciplined for conduct while on duty); Yellowstone County v. Billings Gazette, 2006 MT 218, 333 Mont. 390, 143 P.3d 135 (granting access to county documents prepared in civil litigation concerning county officers).
¶35 Similarly, a court should not answer the second inquiry-whether the subjective expectation of privacy will be recognized and upheld by society-based solely upon the nature of the employee’s duties. Courts should not conclude that merely holding a government position that involves the expenditure of public funds automatically places that person in a ‘^position of public trust,” trumping the potential expectation of privacy that employee has in the subject matter of a personnel investigation conducted by her employer. Many public employees, for example, have access to government credit cards and are required to use them for travel or other essential expenditures related to their employment. Certainly these employees could have actual expectations of privacy in interviews conducted as a part of a personnel investigation. And after review, a court may determine that society would consider those expectations to be reasonable. This Court should not endorse an analysis that is mechanical and rigid and thereby undermine the necessity to balance each case individually.
¶36 And, even as to employees who do not hold “positions of public trust,” there may be facts and circumstances where the district court, after applying the appropriate balancing factors, finds that the privacy expectations are not reasonable and that the public right to know has attained the upper hand. The point is, as we have held repeatedly, each case must be evaluated considering its own unique circumstances.
*534 ¶37 Nevertheless, I agree that the second prong of the test-whether society would be willing to recognize certain subjective expectations as reasonable-does support the conclusion reached by the District Court. Even in circumstances where the trier of fact does determine a subjective privacy expectation exists, it still must be an expectation that society finds to be reasonable. Bozeman Daily Chronicle v. City of Bozeman Police Dept., 260 Mont. 218, 225, 859 P.2d 435, 439 (1993).
¶38 Here, however, the majority (¶ 21), citing Yellowstone County, infers that we have adopted a standard where “society is not willing to recognize as reasonable the privacy interest of individuals who hold positions of public trust when the information sought bears on that individual’s ability to perform public duties.” Yellowstone County, ¶¶ 21-23. Again, such a conclusion is too broad. Standing alone, such a measure would indeed have caused the court to reach a different result in the Missoulian case.
¶39 The District Court conducted the appropriate balancing test. The court held Anthony did not have a reasonable privacy expectation in the due process letter framing the results of an internal investigation into wrongdoing associated with her alleged embezzlement of public funds. Applying the appropriate standard of review, I cannot say considering the facts of this case, that the District Court’s conclusion was incorrect.
JUSTICE MORRIS dissents.
¶40 The Court determines that Anthony had no reasonable expectation of privacy in an investigation into her alleged abuse of the public trust. I fully agree. I disagree, however, that Anthony’s lack of any reasonable expectation of privacy extends to the due process letter. The Court bases its ruling on the fact that Anthony occupied a position of public trust. All public employees in Montana, from the Governor, to university presidents, to town clerks, however, serve in positions of public trust. This formulation adds nothing to the balancing of public rights and private interests inherent in Art. II, Sections 9 and 10 of Montana’s Constitution when applied to disclosure of personnel related documents. The character of the documents at issue should control the outcome of the balancing test rather than the position of the character whom the report documents in these circumstances.
¶41 Delegates to the Montana Constitutional Convention recognized that a deliberation regarding personnel matters for public employees “would ordinarily be classified and would not be public” as the Bill of Rights Committee considered such matters to be “private.” Mont. Const. Conv., Vol. V at 1670-71. The City prepared the due process *535 letter based on two interviews -with Anthony conducted by Captain Joel Slade (Slade). Slade preceded each interview with a warning to Anthony that her failure to cooperate in the investigation could result in her immediate termination. Garrity v. N.J., 385 U.S. 493, 87 S. Ct. 616 (1967). This Garrity warning arose from the need for employers, whether public or private, to investigate quickly a problem situation in the workplace. This investigation forces employees to account for their conduct at the risk of immediate dismissals from their jobs.
¶42 Public employers previously faced a roadblock. To compel an employee to disclose information regarding alleged improper conduct could cause the employee to incriminate himself. The United States Supreme Court sought to resolve this predicament in Garrity. The Court’s resolution allows a public employer to threaten an employee with immediate termination for remaining silent during an internal investigation. To offset this coercion, however, the Court prohibits these statements from being used in any subsequent criminal prosecution of the employee. Garrity, 385 U.S. at 500; Gardner v. Broderick, 392 U.S. 273, 276, 88 S. Ct. 1913, 1915 (1968).
¶43 An employer, such as the City in this case, who threatens termination for an employee’s silence must inform the employee that the statements would be inadmissible in any criminal proceedings. Oddsen v. Board of Fire & Police Commrs., 321 N.W.2d 161, 172 (Wis. 1982). This Garrity warning-which Slade issued to Anthony-fosters the employer’s need for quick action without compromising the employee’s right against self-incrimination. See Jones v. Franklin Co. Sheriff, 555 N.E.2d 940, 944-45 (Ohio 1990).
¶44 The employer likely would become more fully informed about the nature and scope of any wrongdoing when it can force the employee to cooperate. The employer could use this information to determine what, if any, appropriate disciplinary actions should be taken. The employee faces a dilemma when presented with a Garrity warning: speak candidly with the employer or face Immediate disciplinary action. Under the principles announced in Garrity and Gardner, a public employee knows that her failure to divulge information pertinent to the issue of her use or abuse of the public trust may result in the loss of her job. Those cases facilitate a public employer’s ability to remove immediately an employee from a position of public trust if she refuses to cooperate with the employer’s investigation into her conduct. They do not eliminate, however, the employee’s reasonable expectation of privacy in a document that advises her of the employer’s intended employment action.
*536 ¶45 The Court’s decision ignores entirely the fact that the City provided Anthony with a Garrity warning at the outset of the interview from which the City compiled the due process letter. The Court’s decision further fails to account for the fact that the due process letter comprised the core category of personnel information for which our previous decisions have accorded protection. The letter provides notice from the employer to the employee of the disciplinary process and the information that may be used by the employer in any decision to impose discipline. The Court previously recognized in Montana Human Rights and Missoulian that sound public policy dictates that public employees possess a reasonable privacy interest in their employer-employee communication regarding personnel matters.
¶46 This Court affirmed in Missoulian that society would recognize a reasonable expectation of privacy in employer-employee communication. Missoulian, 207 Mont. at 528, 675 P.2d at 970. The Court emphasized that confidentiality would foster more candid communication between the presidents-fche employees-and the Board of RegentsAhe employer. Missoulian, 207 Mont. at 526, 675 P.2d at 969. The Court deemed this expectation reasonable when privacy fostered candid communication between the employer and employee. Missoulian, 207 Mont. at 528, 675 P.2d at 970. The Court attempts to distinguish Missoulian on the grounds that it involved job performance evaluations as opposed to the alleged wrongdoing in the workplace by Anthony. Both job performance evaluations and investigations of alleged wrongdoing in the workplace, however, comprise subparts of the larger category of personnel matters.
¶47 The Court’s reasoning in Montana Human Rights provides further guidance on the scope of a public employee’s privacy rights. The Human Rights Division investigated allegations of employment discrimination by the City of Billings-a form of wrongful conduct. Mont. Human Rights, 199 Mont. at 436, 649 P.2d at 1284. The Human Rights Division sought to compel the release of personnel records, including disciplinary items. The City agreed to release the records of the employees who had alleged discrimination. Mont. Human Rights, 199 Mont. at 436, 649 P.2d at 1285.
¶48 This Court agreed that public employees possess a privacy right in their personnel files. Mont. Human Rights, 199 Mont. at 443, 649 P.2d at 1288. The Court noted that personnel files can include sensitive information including drug and alcohol use, prison records, poor work performance and tardiness-again all forms of wrongful conduct. Mont. Human Rights, 199 Mont. at 442, 649 P.2d at 1288. A *537 discussion regarding an employee’s alleged wrongful conduct constituted precisely the type of communication that frequently occurred between the employer and the employee. Mont. Human Rights, 199 Mont. at 442, 649 P.2d at 1288.
¶49 The Court cited the frequent pressure upon an employee to “communicate these matters to his employer in the privacy of his boss’s office..’! Mont. Human Rights, 199 Mont. at 442, 649 P.2d at 1288. The public employees had received no specific assurances that the information would remain private. The Court nevertheless concluded that “employees would reasonably expect such communication normally would be kept confidential.” Mont. Human Rights, 199 Mont. at 442, 649 P.2d at 1288.
¶50 Anthony faced significant pressure in the form of the Garrity warning to communicate to Slade her explanation for the alleged improper purchases. Anthony may not have received specific assurances that the information to be included in the due process letter would remain private. Similar to the public employees in Montana Human Rights, however, she likely reasonably would have expected her communication would be kept confidential.
¶51 The Court dismisses the balancing at issue in Montana Human Rights as not analogous to Anthony’s case. Opinion, ¶ 25. The Court contrasts Anthony, the focus of the investigation here, with the random job applicants in Montana Human Rights. The Court refused to release the personnel files of these random job applicants. Mont. Human Rights, 199 Mont. at 443, 649 P.2d at 1288. By contrast, the Court reasons that Montana Human Rights approved the release of the claimants’ personnel files. Opinion, ¶ 25. The Court characterizes both Anthony and the claimants in Montana Human Rights as the focus of each investigation. The Court fails to acknowledge, however, that the claimants in Montana Human Rights voluntarily relinquished any privacy rights in their personnel files when they initiated discrimination claims. Their decision to file discrimination claims directly put their personnel files at issue. See State ex rel. Mapes v. Dist. Court, 250 Mont. 524, 529, 822 P.2d 91, 94 (1991). Anthony has asserted her privacy rights throughout this process.
¶52 Moreover, Montana Human Rights issued a protective order to govern the limited release of the personnel files. 199 Mont. at 449-50, 649 P.2d at 1291. The Court limited review of the claimants’ personnel files to the Human Rights Commission itself. Mont. Human Rights, 199 Mont. at 449-50, 649 P.2d at 1291. The Court refused to allow the claimants’ personnel files to be released to the public. Mont. Human *538 Rights, 199 Mont. at 450, 649 P.2d at 1291. The Court further ordered the Human Rights Commission to redact any personal information, including names and specific ethnic designations that reasonably might allow the person to be identified absent authorization from a district court. Mont. Human Rights, 199 Mont. at 450, 649 P.2d at 1291. Today’s decision authorizes the release of Anthony’s due process letter for public dissemination.
¶53 The Court further concludes that “society is not willing to recognize as reasonable the privacy interests of individuals who hold positions of public trusts when the information sought bears on that individual’s ability to perform public duties.” Opinion, ¶ 26, quoting Yellowstone Co., ¶ 21. The Court ignores the fact, however, that Missoulian determined that university presidentsnndoubtedly persons in positions of public trust-had a reasonable expectation in their job evaluations. 207 Mont. at 528,675 P.2d at 970. The university presidents’ job evaluations likely would relate directly to the presidents’ ability to perform their public duties.
¶54 I condone in no way the alleged serious breach of the public trust. I cannot condone, however, the Court’s decision to cast aside a public employer’s strongest weapon to control wrongdoing in the workplace. The promotion of candid communication between an employer and an employee constitutes good public policy-as determined in Missoulian and Montana Human Rights-and serves as a proper foundation to recognize a reasonable expectation of privacy in Anthony’s due process letter. The Court’s refusal to recognize this privacy interest will encourage employees in future cases to remain silent during an internal investigation. This silence will hinder the effectiveness of a Garrity warning, and, more importantly, prevent an employer from taking quick action to ensure the integrity of public institutions. Innumerable situations-from sexual harassment to allegations of embezzlementmiay require a public employer to take swift action to control a workplace. Today’s decision likely will limit a public employer’s ability to take swift corrective action.
¶55 Finally, I disagree that the due process letter’s release would further the public interest. The Gazette rightfully launched an investigation into alleged malfeasance within the Billings Police Department. The Gazette’s investigation forced the City to disclose, or at least agree that it must disclose, much of the information relating to the City’s internal investigation of the alleged malfeasance. The City confirmed to the Gazette that it had initiated an investigation. The City disclosed Anthony’s name to the Gazette as the alleged *539 wrongdoer. The City further stated the general nature of the allegations against Anthony.
¶56 The City even agreed at oral argument that the original receipts from the alleged inappropriate purchases would be subject to disclosure. The Gazette never has sought to obtain these original receipts. Anthony also noted that the Gazette could seek an inventory list from the Billings Police Department to compare with the original receipts to determine any improper purchases. The Gazette never has sought to obtain an inventory list. The Gazette instead sought to obtain the due process letter.
¶57 The due process letter recounts conversations between Slade and Anthony. The letter restates each question that Slade asked Anthony about specific expenditures. Anthony’s respective explanation for the questionable expenditure follows each question. The letter repeats this pattern for the near entirety of its 16 pages. The letter reveals little information outside of Anthony’s statements to Slade.
¶58 The public’s right to know diminishes when the information sought could be obtained from other public sources. Belth v. Bennett, 227 Mont. 341, 349, 740 P.2d 638, 643 (1987). Nearly all the information concerning the allegations of Anthony’s improper purchases-including the original receipts and inventory list-readily were available from sources other than the due process letter. The wrongful nature of some purchases would have been manifest from a review of the receipts alone. The receipts indicate that Anthony purchased 8 LCD TVs, a 42-inch plasma TV, a home theater system, two satellite radios and accessories, a Blu-Ray player, three DVD players, iPod accessories, and a Whirlpool French Door refrigerator.
¶59 The only item that was not available from other sources, and the only right to know that can be claimed in the due process letter, derived from Anthony’s explanations for these purchases. Anthony’s explanations in the due process letter provide no substantive information that better informs the public about mismanaged funds. Disclosure of the original receipts themselves, the inventory lists, and the City’s oversight procedures-er obvious lack thereof-that allowed any malfeasance to occur better serves the public interest in rooting out mismanagement of public funds.
¶60 Not surprisingly, the Court finds implausible Anthony’s explanations for the alleged improper purchases contained in the due process letter. The incredulity of Anthony’s explanations does not warrant a decision to jettison the longstanding policy of promoting confidentiality of employer-employee communication regarding *540 personnel matters. The Court’s formulation injects the alleged wrongful nature of the conduct into the disclosure calculus.
¶61 We recognized in State v. Goetz, 2008 MT 296, ¶¶ 35-36, 345 Mont. 421, 191 P.3d 489, however, that the “underlying purpose or content of the conversation” should not affect a person’s expectation of privacy in a conversation within their home or other private setting. Likewise, reasonableness of the privacy interest in a personnel document should not turn on whether the document accuses or exonerates the employee of wrongdoing. In the same manner that “ ‘police conduct may not be justified on the basis of the fruits obtained[,]’ ” Goetz, ¶ 36 (citation omitted), disclosure of employment documents may not be justified on the basis of allegations of wrongdoing. Opinion, ¶ 25.
¶62 I dissent.
JUSTICES RICE and BAKER join in the foregoing dissent.

 The District Court determined that Anthony was not an indispensable party and Anthony had not moved to intervene prior to the notice of appeal. Consequently, we do not have a record of Anthony’s actual expectations, but her attorney clearly represented to this Court that she opposed release of the letter.